Commonwealth *v.* Jones, Appellant.

Argued April 20, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

572

*Richard H. Knox,* with him *John Patrick Walsh,* and *Reinl, Lockwood & Knox,* for appellant.

*Maxine J. Stotland,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, July 2, 1973:

Appellant was indicted for murder, voluntary manslaughter, involuntary manslaughter, conspiracy, two counts of aggravated robbery, carrying a concealed deadly weapon and burglary. In May of 1968, trial proceeded on all bills except involuntary manslaughter. At the conclusion of the testimony, a demurrer was sustained as to carrying a concealed deadly weapon. The jury returned verdicts of guilty of first degree murder, conspiracy, both counts of aggravated robbery, and burglary. After post-trial motions were denied by a court en banc, appellant was sentenced to life imprisonment on the murder charge and to concurrent terms of from ten to twenty years on the two aggravated robbery indictments; sentence was suspended on the conspiracy and burglary charges. This direct appeal followed.[1]

---

[1] The non-murder convictions were appealed to the Superior Court and certified to this Court.

The record reveals the following facts: Three eye-witnesses who knew the appellant from the neighbor-hood testified that on December 29, 1967, the appellant and two other men entered the back door of the Shali-mar Bar in Philadelphia and engaged the bartender, one Louis Butler ("Parks"), in conversation. At some point, one of the three men left the bar, leaving appel-lant and the third man talking to "Parks". After about twenty minutes of conversation, the appellant sudden-ly pulled "Parks" forward by his shirt and shot him.

At that moment, a patron entered the bar. Appel-lant grabbed the patron by the arm, and, according to the testimony of Deborah White ripped a watch from the patron's wrist. Appellant then ordered everyone to move to the rear of the bar into the ladies room. Every-one remained in the ladies room for five or ten minutes, after which they returned to the barroom to find that the appellant and his companion had disappeared, and that the cash register drawer was open and empty. Eleven days later, on January 8, 1968, the appellant was arrested on a warrant at the home of his girl friend, Bertha Wilson.

The appellant raises numerous challenges to his convictions which we will consider seriatum.

The first issue concerns the propriety of the ar-raignment procedure. On April 24, 1968, appellant was arraigned without counsel and pled not guilty to charges of conspiracy, aggravated robbery (two counts), carrying a concealed deadly weapon, and bur-glary with intent to commit a felony. Counsel was ap-pointed on June 10, 1968. On May 23, 1969, the appel-lant received a counseled arraignment in open court on the murder bill and pled not guilty. He argues that the April 24 arraignment on the non-homicide charges was fatally defective because he lacked counsel in vio-lation of the Sixth and Fourteenth Amendments to the United States Constitution. "It is central to [the prin-

ciple of right to counsel] that in addition to counsel's presence at trial, the accused is guaranteed that he will not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 226 (1967). In keeping with that principle, our rules of criminal procedure provide that: "In all indictable cases, at the time of arraignment, if the defendant is without financial resources or otherwise unable to employ counsel, counsel shall be appointed by the court to represent him unless he intelligently and understandingly elects to proceed without counsel and signs a written waiver of counsel." Pa. R. Crim. P. 317 (c). This rule insures that if the accused is still unrepresented by the time of arraignment, an attorney will be appointed quickly to avoid the possibility of an uncounseled guilty plea, confession, or confrontation of witnesses.

In the case at bar, the accused appeared at the arraignment without counsel, signed the pauper's oath (See Pa. R. Crim. P. 318A), and pled not guilty. Counsel was appointed shortly thereafter, before appellant's ability to conduct a defense had suffered any prejudice whatsoever. This case is, therefore, clearly distinguishable from cases where the accused was permitted to plead guilty without representation. See, e.g., *White v. Maryland*, 373 U.S. 59 (1963) ; *Commonwealth v. Allen*, 428 Pa. 401, 238 A. 2d 770 (1968) ; *Commonwealth ex rel. O'Lock v. Rundle*, 415 Pa. 515, 204 A. 2d 439 (1964). It is also distinguishable from cases where an uncounseled accused waived important rights or strategical opportunities. See, e.g., *Coleman v. Alabama*, 399 U.S. 1, 9 (1970) (right to counsel at preliminary hearing) ; *Hamilton v. Alabama*, 368 U.S. 52 (1961) (right to counsel at a proceeding where the right to

assert insanity defense and right to challenge array of grand jury may be waived).

In contrast to the procedures in *Coleman* and *Hamilton*, "the purpose and necessity of an arraignment [in Pennsylvania] is to fix the identity of the accused, to inform him of the nature of the charges against him and to give him the opportunity of informing the court of his plea thereto." *Commonwealth v. Phelan*, 427 Pa. 265, 272, 234 A. 2d 540 (1967). Here, both the accused and his attorney were well aware of all of the charges at issue and the entry of the plea of not guilty at a time that he was not represented in no way adversely affect his defense. Had he been represented at that time it is obvious that the same plea would have been entered. We, therefore, fail to find any deprivation of due process occurring during that proceeding. *Commonwealth v. Phelan*, supra. Cf., *Commonwealth v. Paskings*, 447 Pa. 350, 290 A. 2d 82 (1972); *Commonwealth v. Banks*, 447 Pa. 356, 285 A. 2d 506 (1971); *Commonwealth v. Jennings*, 446 Pa. 294, 285 A. 2d 143 (1971).

Despite the existence of one valid arraignment, the appellant urges that a second arraignment on the non-homicide charges was required in open court. Pa. R. Crim. P. 317(a)[2] requires such a procedure in capital cases,[3] and it is uncontested that appellant was so arraigned on the murder bill.[4] In cases other than capital, arraignment is left to local court rules or practice.

---

[2] That rule provides: "Arraignment in capital cases shall be conducted in open court and shall consist of a reading of the indictment to the defendant and calling upon him to plead thereto. If the defendant shall refuse to plead, the court shall enter a plea of not guilty on his behalf."

[3] We need not here consider the impact of *Furman v. Georgia*, 408 U.S. 238 (1972), upon this provision. Cf. *Commonwealth v. Trucsdale*, 449 Pa. 325, 296 A. 2d 829 (1972).

[4] Appellant received no arraignment on the voluntary manslaughter bill. Since that bill merely duplicated the murder bill, he suffered no prejudice.

Rule 317(e)[5]. The appellant relies upon Rule 317(b*) adopted by the Board of Judges of Philadelphia County: "In all cases where the defendant or his attorney has been summoned at least ten days before . . . trial, arraignment *may* take place on the day of the trial." (Emphasis supplied.) That rule is clearly discretionary. In this case, where the appellant had already received one valid arraignment, and where at the time of the arraignment in the murder bill counsel raised no request for a second arraignment on the non-homicide charges, the trial judge acted within his discretion in not requiring the defendant to be rearraigned on the non-homicide charges.

The appellant further asserts that the jury was confused by the introduction into the case of charges that were not part of the May 23, in-court arraignment. We disagree. The reading of technical charges from an indictment does little to aid the jury's understanding of the case. The arraignment is not designed to frame the legal issues for the jury. Rather, it is the judge's charge at the conclusion of the evidence that fulfills that function. Often, as was the case here, a charge will be withdrawn from the jury's consideration after the Commonwealth has presented its case. We will not assume, therefore, that the jury was confused based solely on an allegation that all charges were not read in their presence prior to trial.

To support the argument that confusion occurred, appellant points to the fact that juror number one when first questioned during the poll of the jury announced her verdict as guilty of murder. She immediately amended her statement to designate the verdict as murder in the first degree. To attempt to support a con-

---

[5] That rule provides: "Arraignment in cases other than capital may be in such form and manner as provided by local court rules or practice."

clusion that the entire jury was confused because of the failure to arraign the appellant before them on the non-homicide charges from this obvious inadvertence on the part of one juror is absurd. Appellant also urges that the jury's attempt to render a verdict on the voluntary manslaughter bill after the first degree murder verdict had already been recorded is further evidence of its confusion. The record reveals no such attempt on the part of the jury. It shows only a dialogue between the Court and defense counsel as to whether that verdict should be announced and recorded. Again, we see no evidence of confusion on the part of the jury.

Finally, appellant cites the fact that the jury returned requesting supplemental instructions on conspiracy and aggravated robbery as evidence of its confusion. Such requests are specifically authorized by Pa. R. Crim. P. 1119(c),[6] and we find nothing in the questions asked indicating confusion.

The appellant also contends that, in giving these supplemental instructions the trial judge erroneously directed a verdict of guilty of first degree murder. The record reveals the following colloquy: "THE COURT: You can do what you believe the facts indicate. I give you the law, the law is simply this, relating to the conspiracy, if you believe from the testimony that the defendant was acting in concert to[g]ether with the man who put his hand in the cash register, and the defendant killed the deceased, then the defendant is equally guilty of the robbery and this thus becomes a felony murder, if you believe that testimony. Now, you have heard the testimony, and if you believe it, you are

---

[6] "After the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties, except that the defendant's absence without cause shall not preclude proceeding, as provided in Rule 1117."

justified in finding the defendant guilty of first degree murder, based on the felony degree murder ascertained to the cash register that were the the conspiracy as involved this defendant himself, according to testimony, put the gun to his head of another man and took his wrist watch— THE FOREMAN: Is that aggravated robbery? In other words, that would be the charge of that? THE COURT: Let me answer that question. You have the two counts of aggravated robbery against this defendant is the taking of the money out of the cash register. The second count of aggravated robbery is the taking of a wristwatch, a man who has a gun to his head. THE FOREMAN: I think that clears it up, sir. It seems to me— THE COURT: I don't want a comment, just your questions. If you have any more questions, you ask them." We note that the trial judge based his instructions on the only version of the facts presented, and he carefully prefaced those instructions by the phrase, "Now you have heard the testimony and *if* you believe it—." Clearly, the judge did not invade the jury's province to find the facts. Cf. *Commonwealth v. Archambault*, 448 Pa. 90, 290 A. 2d 72 (1972). We, therefore, find that the jury was neither confused, nor misled.

The appellant next asserts that it was error for the trial judge to grant the Commonwealth's motion to sever the involuntary manslaughter indictment. This Court has held that a defendant has no right to have the charge of involuntary manslaughter submitted to the jury where there are no facts presented by either side to support that charge. *Commonwealth v. Robinson*, 452 Pa. 316, 305 A. 2d 354 (1973) ; *Commonwealth v. Garrison*, 443 Pa. 220, 279 A. 2d 750 (1971) ; *Commonwealth v. Flax*, 331 Pa. 145, 200 A. 632 (1938).

The elements of involuntary manslaughter are " ' "the killing of another without malice and unintentionally, but in (1) doing some unlawful act not

amounting to a felony nor naturally tending to cause death or great bodily harm, (2) or in negligently doing some act lawful in itself, or (3) by the negligent omission to perform a legal duty." ' Commonwealth v. Mayberry, 290 Pa. 195, 138 A. 686 (1927)." *Commonwealth v. LaPorta,* 218 Pa. Superior Ct. 1, 6, 272 A. 2d 516 (1970). The only version of the facts presented in this case indicates that, after an extended conversation the appellant pulled the deceased toward him and shot him. In so doing, the appellant's actions obviously were not of an unintentional, accidental or involuntary nature so as to reduce the offense to involuntary manslaughter and the trial judge did not abuse his discretion in granting a motion to sever that bill.

Appellant urges that it was error for the trial judge to refuse to have the jury announce its verdict on the voluntary manslaughter bill after the recording of the verdict of first degree murder. An indictment for murder permits a finding of voluntary manslaughter, *Commonwealth v. Letherman,* 320 Pa. 261, 181 A. 759 (1935). A verdict of murder in the first degree is necessarily a rejection by the jury of a voluntary manslaughter claim, thus the voluntary manslaughter bill was superfluous. The court properly refused to specifically request a finding on the voluntary manslaughter bill because the jury's verdict on that charge had already been made known from the verdict on the murder bill.

Appellant also objects to the practice of recording the verdict of first degree murder and proceeding directly into the penalty hearing for that offense before recording the verdict on the non-homicide charges. We agree that such a procedure is unique and is discouraged because it allows the possibility that the jury's verdict on the lesser charges will be improperly influenced by the broad range of evidence that is permitted at penalty hearings which is not properly before the

jury during the adjudicatory stage. If any evidence having a potentially prejudicial effect on the defendant had been presented at that hearing, a serious question as to the validity of the subsequent verdicts on the lesser charges would have been raised. Here, however, the prosecution offered no evidence at the penalty hearing since it was content with a life sentence. The only evidence presented at that hearing was very favorable to the appellant, showing his close family ties, his record of prior military service, favorable references from former employers, and the absence of a prior criminal record. Thus, the penalty hearing could only have aided appellant's cause with regard to the other charges, and defense counsel wisely chose not to object to the procedure.

The appellant next cites the prosecution's failure to call eyewitnesses to the homicide. Specifically, Timothy Morrell (the alleged robbery victim), Darlene Gillison, Sonya Lee, Pearl Gilliam (female customers), and "strangefellow" (an employee of the Shalimar Bar) did not testify. Pearl Gilliam was subpoenaed and did appear in court, making her equally available to the defense counsel if he desired her testimony. The prosecutor felt that her testimony would be cumulative to that of three other eyewitnesses. The prosecutor produced testimony concerning the unavailability of the other four potential witnesses.

The applicable law is stated in *Commonwealth v. Gray*, 441 Pa. 91, 99-100, 271 A. 2d 486 (1970): " 'Pennsylvania decisions have long recognized that in criminal trials the prosecution is not absolutely bound to call to the stand all available and material eyewitnesses. On the other hand, a number of decisions clearly indicate that when the Commonwealth does not call to the stand such an eyewitness, it must apprise the defense of the witness's name and whereabouts at trial, unless the defense is able or should have been able to

procure the witness unaided.'" (Citations omitted.) (Footnotes omitted.) Where, as here, all eyewitnesses have either been made available to the defense, or have been shown to be unavailable, we can perceive no unfairness to the defendant. This is particularly true since there is no indication that any of the unavailable eyewitnesses would have subsequently become available and testified favorably to him.

We also reject appellant's contention that it was improper to permit the prosecution to submit evidence explaining the absence of these eyewitnesses. Since the failure to call such witnesses would entitle the defendant to a charge permitting the inference that their testimony would have been unfavorable to the Commonwealth, the Commonwealth not only has the right but also the obligation to explain their inability to produce the witness.

The appellant submitted twenty-eight points of charge, and he now objects that seven of them were erroneously refused. The record clearly shows that one of the seven, Point No. 12, was withdrawn and need not concern us here. Three of the points of charge were properly and adequately covered by other instructions and, therefore, were properly refused. *Commonwealth v. Butler*, 405 Pa. 36, 52, 173 A. 2d 468 (1961). The trial judge gave a comprehensive charge in the area of felony murder, and it was, therefore, unnecessary to instruct the jury as suggested by points No. 13[7] and

---

[7] "13. In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is malice and not the act of killing. The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. It is necessary to show that the conduct causing death was done in furtherance of the design to commit the felony, in this case robbery. Death must be a consequence of the robbery and not merely coincidence."

No. 22[8] submitted by the appellant. Point No. 10[9] was adequately covered by the trial judge's charge on burden of proof.

The other three points of charge were also unwarranted. Point No. 16[10] amounts to a directed verdict of acquittal of first degree murder, and the facts of this case clearly do not require such a charge. Point No. 25[11] ignores the fact that the prosecution need not prove a specific intent to kill in order to support a verdict of first degree murder, so long as the killing was committed in the perpetration of or attempt to perpetrate one of the enumerated felonies. Act of June 24, 1939, P. L. 872, §701, 18 P.S. §4701. *Commonwealth v. Yuknavich,* 448 Pa. 502, 295 A. 2d 290 (1972); *Commonwealth v. Simpson,* 436 Pa. 459, 260 A. 2d 751 (1970).

Point No. 7[12] instructs the jury to give the defendant the benefit of any reasonable doubt upon considera-

---

[8] "22. If the jury finds that the intent to steal was not formed in the mind of the defendant before or at the time of the shooting or if the jury has a reasonable doubt whether such intent was in the defendant's mind when the shot was fired, then the felony murder doctrine does not apply." Cf., *Commonwealth v. Butcher,* 451 Pa. 359, 304 A. 2d 150 (1973).

[9] "10. The burden of proof which the law places the Commonwealth never shifts. That is, the Commonwealth must prove every material portion of all charges beyond a reasonable doubt and at no time does the burden shift to the defendant to prove his innocence."

[10] "16. Under the facts of this case you may not find defendant guilty of murder in the first degree since the Commonwealth has failed to show a robbery upon Louis Butler and there is no evidence of willful, deliberate and premeditated killing."

[11] "25. There must be evidence that prior to the shooting, however, short the time the defendant formed the specific intent to kill, in order to find the defendant guilty of first degree murder, otherwise, Ladies and Gentlemen, if no specific finding of an intent to kill can be determined by you, the defendant cannot be found guilty of first degree murder."

[12] "7. The defendant is not only entitled to any reasonable doubt which may arise upon an ultimate consideration of the evi-

tion of any item of evidence. While it is true that the Commonwealth must prove every element of the crime charged beyond a reasonable doubt, *Commonwealth v. Johnston*, 438 Pa. 485, 263 A. 2d 376 (1970) ; *Commonwealth v. Yeager*, 329 Pa. 81, 196 A. 827 (1938), this does not mean that it must prove every "item of evidence" beyond a reasonable doubt. The charge requested by the appellant is, therefore, a misstatement of the law and the trial judge correctly refused to accept it.

Finally, appellant challenges the sufficiency of the evidence of the two alleged aggravated robberies. Aggravated robbery is defined by statute: "Whoever being armed with an offensive weapon or instrument, robs or assaults with intent to rob another; or together with one or more persons, robs or assaults with intent to rob; or robs any person, and at the same time or immediately before or immediately after such robbery, beats, strikes, or ill-uses any person or does violence to such person is guilty of felony. . . ." Act of June 24, 1939, P. L. 872, §705, 18 P.S. §4705.

The first robbery involved one of the cash registers behind the bar. There was testimony from those present, that money had been placed in the register during the course of the evening, that the register drawer had been closed when the witnesses were forced into the ladies room, and that when they returned, the drawer was open and empty.[13] There was additional testimony that, after the shooting, appellant's co-defendant at-

dence in the case, but to the benefit of every reasonable doubt which may enter the mind of a juror upon the consideration of an item of evidence during the progress of the trial, and dealing with any of the specific offenses involved in this case."

[13] It is not fatal to the Commonwealth's case that one of its witnesses recalled that the drawer was shut when she returned to the room. "The Commonwealth is not bound by the testimony of a witness who proves adverse, but it is for the jury to determine where the truth lies." *Commonwealth v. Eakin*, 92 Pa. Superior Ct.

584

tempted to open the register. Accepting as true this evidence and all reasonable inferences arising therefrom the jury could and did quite properly return a verdict of guilty on the charge of aggravated robbery. *Commonwealth v. Williams,* 450 Pa. 327, 329, 301 A. 2d 867 (1973) ; *Commonwealth v. Wright,* 449 Pa. 358, 360, 296 A. 2d 746 (1972).

The appellant was also charged with robbing a patron of a watch at gunpoint. Deborah White testified that, after the shooting, a man came into the bar and appellant, with a gun in his hand, pushed that man into a booth and removed a watch from the man's wrist. This testimony is corroborated by Roslyn Brown. On the facts of this case, we do not feel that the Commonwealth's inability to produce the alleged victim was necessarily fatal to this charge.

The judgment of sentence is affirmed.

Mr. Justice MANDERINO concurs in the result.

---

381, 383 (1928) ; *Commonwealth v. Mediote,* 38 Pa. Superior Ct. 194, 199 (1909) ; Cf. *Commonwealth v. Gray,* 441 Pa. 91, 94, 271 A. 2d 486 (1970).