393 A.2d 435

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Warner BATTY, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 22, 1978.

Decided Oct. 27, 1978.

Robert Bruce Evanick, Asst. Public Defender, for appellant.

Daniel Wolfson, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

### OPINION OF THE COURT

EAGEN, Chief Justice.

The facts of this case may be summarized as follows:

On February 1, 1975, at a time when appellant, Warner Batty, was fifteen years of age, he and an eighteen-year-old companion, Donald Rivera, forced a young woman they had encountered along a city street to accompany them to an abandoned property in York, Pennsylvania. Although it was cold and there was no heat in the building into which she was taken, the woman was compelled to remove all her

clothing, forced to have sexual intercourse with both Batty and Rivera, and forced at knife point to commit deviate sexual intercourse. Thereafter, for a prolonged period of time, the victim was beaten, kicked, cut, and struck with both fists and a blunt instrument. The injuries caused her death.

Before they left the room where the incident took place, Batty and Rivera placed a mattress over the woman's body. Shortly thereafter, a fire was observed in the room. The fire seriously marred the young woman's body and damaged the room.

Subsequent to Batty's arrest, his counsel filed a petition to transfer the proceedings from the Court of Common Pleas of York County to the juvenile court, pursuant to the Juvenile Act.[1] This petition was denied after an evidentiary hearing.

Batty subsequently plead guilty to murder generally. At the degree-of-guilt hearing, a three-judge court unanimously determined that Batty was guilty of murder of the first degree and imposed a sentence of life imprisonment. Thereafter, Batty filed this direct appeal.

First, Batty contends the trial court, at the degree-of-guilt hearing, erred in admitting three photographs of the victim's body into evidence because they were both "irrelevant and inflammatory."[2]

The question of admissibility of photographs of a corpse in homicide cases is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error. *Commonwealth v. Petrakovich,* 459 Pa. 511, 521, 329 A.2d 844, 849 (1974).

1. Juvenile Act, Act of December 6, 1972, P.L. 1464, No. 333, § 1 *et seq.,* 11 P.S. § 50–101 *et seq.* [Hereinafter: 11 P.S. § —.] See specifically 11 P.S. § 50–303 regarding transfer to juvenile court in murder cases.

2. The photographs were 8″ × 10″ black and white prints. Two showed the position and condition of the body after it was found at the scene. The third, taken after the body was cleaned and scrubbed, revealed the lacerations and burns.

■ The general rule is that evidence is admissible if it is relevant and competent. This basic rule applies to the admission of photographs, as well as other types of demonstrative evidence. *Commonwealth v. Schroth,* 479 Pa. 485, 489, 388 A.2d 1034, 1036 (1978). The challenged photographs were clearly relevant.

■ However, the admissibility of photographs of a corpse in a homicide case requires further consideration. While a photograph of a corpse is not inflammatory *per se, Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970), "[w]hether or not such a photograph is admissible depends . . . on a two-stepped analysis. First, the trial court must decide whether the photograph possesses inflammatory characteristics. If the Court finds that it does not, the picture is admissible as is any evidentiary item, subject, of course, to the qualification of relevance. If, *but only if,* the photograph is deemed to be inflammatory, the Court must then apply the balancing test . . . i. e., is the photograph of 'such essential evidentiary value that [its] need clearly outweighs the likelihood of inflaming the minds and passions *of the jurors.'*" [Emphasis supplied.] *Commonwealth v. Hilton,* 461 Pa. 93, 100, 334 A.2d 648, 652 (1975) (concurring opinion of Mr. Justice Pomeroy, joined by Mr. Chief Justice Jones and Mr. Justice (now Chief Justice) Eagen, Mr. Justice O'Brien and Mr. Justice Nix), quoting *Commonwealth v. Powell,* 428 Pa. 275, 278–79, 241 A.2d 119, 121 (1968).

■ This evidentiary rule is not designed to protect an accused from the *per se* use of photographs of a victim of a homicide; its purpose is to protect an accused from a conviction based upon a jury's emotional reaction, rather than a careful deliberation of the facts of the case. While the admission of certain photographs might constitute reversible error in a case tried before a jury, this is not necessarily so if the trial is nonjury. In the latter instance, other considerations are involved.

As the Superior Court has said in *Commonwealth v. Rouse*, 207 Pa.Super. 418, 421–22, 218 A.2d 100, 102 (1966), albeit in another context:

"If this had been a trial before a jury, [appellant's] argument would be a more compelling one. However our examination of the record of a trial without a jury differs in certain respects from our examination of a jury trial record [cite omitted]. In the case of a trial before a jury, we must be mindful that twelve laymen, unlearned in the technicalities of the rules of evidence, can be easily confused or prejudiced by certain evidence admissible as having value for one purpose but not for another. When the [appellant] waives a jury trial, we have a right to expect a more perceptive and judicious application of the rules of evidence by a trial judge, learned in the law. . . He, unlike a layman, also knows that improperly admitted evidence must be stricken from consideration. It is the fear that a layman cannot separate in his deliberation the admissible evidence from the inadmissible that leads a trial judge to withdraw a juror in certain trials."

So too, a judge is sufficiently trained and knowledgeable in the law to realize that he may not allow the potentially inflammatory nature of photographs of a victim's body to sway his judgment. While the photographs instantly may have been deemed inflammatory, and hence inadmissible, in a jury setting, a judge, as the trier of fact, possesses the training, skill, and experience to enable him to view such photographs in a manner so as to preclude prejudicial opinions based on emotion. Since instantly the trial was nonjury, we find no abuse of discretion.

Batty next complains the trial court failed to set forth with sufficient specificity the reasons for denying his petition to have his case transferred to the juvenile court. In this argument, Batty relies heavily upon the case of *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) [Hereinafter: *Kent*].

*Kent*, supra, considered the procedural rights to be afforded a juvenile before a determination is made whether to

transfer the proceedings from the jurisdiction of the juvenile court to the jurisdiction of the adult criminal court. *Kent,* supra at 556, 86 S.Ct. at 1055, said a proceeding to aid in this decision is a " 'critically important' action determining vitally important statutory rights of the juvenile." *Kent,* supra, then held a statement of reasons for the denial of a request for transfer must be included in the opinion of the court denying the petition. This statement must be sufficient to allow a "meaningful review" in an appellate court.

> "Meaningful review requires that a reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review."

*Kent,* supra at 561, 86 S.Ct. at 1057.

Here, the opinion of the trial court, filed after the hearing on the transfer petition, included a factual account of the incident along with a summary of crucial testimony. The trial court concluded:

> "We have considered the defendant's present age of 16 years, his physical maturity, normal mental capacity, previous record, propensity for the use of alcohol, the nature of the instant offense, the pathological factors present in his emotional status, and the uncertainty as to the effectiveness of therapeutic intervention and whether it could

be accomplished within the period of his minority to which the jurisdiction of the Juvenile Division is limited. After doing so, we conclude as a matter of law that defendant has not established that his need for care, guidance and treatment as a juvenile outweighs the need of the State to apply legal restraint and discipline to him as an adult."

In order to evaluate whether the reasons stated by the court afforded Batty the protections enumerated by *Kent,* supra, and available through *Commonwealth v. Pyle,*[3] 462 Pa. 613, 342 A.2d 101 (1975), we must consider the criterion stated by the Court in *Kent,* supra, 383 U.S. at 552–53, 86 S.Ct. at 1053:

> "We agree . . . that the statute contemplates that the Juvenile Court should have considerable latitude within which to determine whether it should retain jurisdiction over a child or . . . should waive jurisdiction. But this latitude is not complete. At the outset, it assumes procedural regularity sufficient, in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory

---

**3.** In the present case, we are not dealing with the possible transfer of a youthful offender to a criminal court per *Kent,* supra. Rather, Batty, by reason of the Juvenile Act, is petitioning to be transferred *from* the criminal court to the juvenile court. See 11 P.S. § 50–303. However, this distinction has been obviated in *Commonwealth v. Pyle,* supra, 462 Pa. at 621, 342 at A.2d 105:

> "[I]n order to try in a criminal court any person who might qualify as a juvenile, the waiver into such criminal court must be in a manner conforming to due process of law.
> "Although the *Kent* decision . . . involve[d] the 'waiver of the original and exclusive jurisdiction of the juvenile court,' we believe an adult criminal court, when dealing with a person who might *potentially* qualify for treatment as a juvenile, must follow the same due process requirements. The privileges of juvenile jurisdiction, although not conferred in the first instance, are potentially as important to the youth accused of murder as to the youth accused of delinquency. Assuming there are those who would initially be within the jurisdiction of the criminal court and who would be deserving of transfer, the only way to insure that such juveniles are not *arbitrarily* denied access to juvenile treatment is to insist that they be given the same procedural rights." [Footnote omitted. Emphasis supplied.]

Thus, in Pennsylvania, any juvenile at any waiver proceeding is entitled to the rights enumerated in *Kent,* supra.

requirement of 'full investigation.' [Cites omitted.] The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached. It does not confer upon the Juvenile Court a license for arbitrary procedure. The statute does not permit the Juvenile Court to determine in isolation and without the participation or any representation of the child the 'critically important' question whether a child will be deprived of the special protections and provisions of the Juvenile Court Act."

In the present case, the court specifically indicated in its opinion the controlling statute. It enumerated various considerations to be applied in a case such as this. It specified the considerations upon which it based its ultimate conclusion. These considerations have been reviewed by this Court, and are amply supported by the record.[4] We find the

---

**4.** At the transfer hearing, the court heard testimony from nine witnesses over a two-day period. Six witnesses testified as to Batty's general behavior patterns, and events which took place on the evening in question. The three other witnesses testified as follows:

A clinical psychologist, with previous experience in treatment of juveniles in York County over a five-year period, testified, after giving a general psychological profile of Batty, that he would be amenable to treatment as a juvenile, rather than as an adult. However, along with acknowledging Batty's chronic drinking problem, the psychologist went on to reveal Batty would require a "total program of treatment" which would require confinement. Further, he could not indicate how long such an "intensive program" would have to last in order to be effective.

A psychiatrist also testified as to Batty's condition and possible course of treatment. He classified Batty as impulsive, immature, angry, resentful, and a follower. This witness stated Batty would be more amenable to juvenile, rather than adult treatment. However, he went on to state Batty's condition requires he be kept in a hospital or "residential treatment center," and indicated Batty might be dangerous to society if immediately set free. He could not specify how long such a treatment program should continue, but stated some of his patients have been under care for over seven years. He testified that counselling on the drinking problem should be available. While stating juvenile treatment was preferable, the psychiatrist went on to testify Batty could, if properly treated, get adequate care in an adult setting.

The third witness, whose testimony we will review, was an attorney for the Camp Hill Project. He testified as to the type of care

ruling of the trial court refusing the transfer firmly within the guidelines of *Kent,* supra, and neither arbitrary nor preclusive of "meaningful review."

Batty's final complaint concerns the time frame available for the treatment of a juvenile within the framework of the Juvenile Act. He contends the court erred in considering his "minority," i. e., until eighteen years of age, as the crucial time period during which treatment could be ordered pursuant to the Juvenile Act. Batty correctly argues the jurisdiction of the juvenile court extends until the age of twenty-one. The Juvenile Act specifically provides:

" 'Child' means an individual who is:

(i) under the age of eighteen years; or (ii) under the age of twenty-one years who committed an act of delinquency before reaching the age of eighteen years; or who was adjudicated dependent before reaching the age of eighteen years and who, while engaged in a course of instruction or treatment, requests the court to retain jurisdiction until the course has been completed, *but in no event shall a child remain in a course of instruction or treatment past the age of twenty-one years.*" [Emphasis supplied.] 11 P.S. § 50–102. See *Commonwealth v. Greiner,* 479 Pa. 364, 388 A.2d 698 (1978).

A review of the court's opinion indicates it considered Batty's potential period of treatment to include the "*minority to which the jurisdiction of the Juvenile Division is limited,*" i. e., until twenty-one years of age, and not until

available for the treatment of juveniles at various Commonwealth facilities. At the conclusion of his testimony, the following colloquy ensued:

"THE COURT: Earlier, a psychiatrist testified that as a result of his evaluation of this young man that in his opinion he needs intensive, long term, residential psychiatric treatment similar to that which would be available in a psychiatric hospital.

"THE WITNESS: I would say that psychiatric care would be available, probably not on the grounds of the program, but there would be psychological care, and staff that would be specially trained to meet the needs. *I'm not sure that type of treatment is available, Your Honor, in a public institution in Pennsylvania.*" [Emphasis supplied.]

eighteen years of age as Batty contends. Batty's final argument is, therefore, without merit.

Judgment of sentence affirmed.

ROBERTS, J., filed a concurring opinion.

MANDERINO, J., filed a dissenting opinion.

ROBERTS, Justice, concurring.

I agree that the photographs were admissible into evidence at the degree of guilt hearing. I reach this conclusion, however, by utilizing a different approach than that used by the majority. See *Commonwealth v. Chacko*, 480 Pa. 504, 391 A.2d 999 (1978) (Roberts, J., concurring opinion).

Determining the admissibility of photographs "involves weighing the necessarily inflammatory nature of this evidence against its 'essential evidentiary value.'" *Commonwealth v. Martinez*, 475 Pa. 331, 336, 380 A.2d 747, 750 (1977) (plurality opinion). The photographs were probative of the degree of appellant's culpability. They were introduced to help rebut appellant's assertion that culpability did not reach murder of the first degree. The pictures clearly demonstrate that appellant, after inflicting a severe beating, took steps to conceal his crime. Thus, the evidentiary value of the photographs outweighed their inflammatory impact on the trier of fact and they were properly introduced into evidence.

MANDERINO, Justice, dissenting.

I dissent. The majority proceeds on the false assumption that judges have control of their emotions superior to laymen. The majority states, "[w]hile the photographs instantly may have been deemed inflammatory, . . . a judge, as the trier of fact, possesses the training, skill, and experience to enable him to view such photographs in a manner so as to preclude prejudicial opinions based on emotion." (at 178). I must emphatically disagree. Judges receive training in the *procedures* of fairness but I know of no judge who was trained in law school—if indeed, one ever could be—in

184

how to react more fairly to inflammatory stimuli than other adult individuals. *Commonwealth v. Green*, 464 Pa. 557, 566, 347 A.2d 682, 686 (1975) (Manderino, J., dissenting opinion.)