394 A.2d 508

COMMONWEALTH of Pennsylvania, Appellee,

v.

Eugene N. WOODWARD, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 22, 1978.

Decided Nov. 18, 1978.

Lester G. Nauhaus, Paulette J. Balogh, Asst. Public Defenders, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

This is a direct appeal from the judgment of sentence of life imprisonment imposed on Eugene N. Woodward following his conviction by a jury in 1972[1] in Allegheny County of murder of the first degree.

The salient facts surrounding the conviction are as follows: On the evening of December 10, 1971, a man, later identified as Woodward, entered a Pittsburgh bar and ordered a beer and some potato chips. As the bartender placed the potato chips on the bar, he heard a "pop" and saw the victim, Ernest Reidel, put his hand to his neck which was bleeding profusely. The man with the gun then directed the

1. Woodward was permitted to file an appeal nunc pro tunc after instituting post conviction relief proceedings.

bartender to "empty the register," but, upon noticing the victim's wound, the gunman fled without any money.[2]

At trial, extrajudicial incriminating statements made by Woodward to a police officer were admitted into evidence as part of the Commonwealth's case. Woodward maintains that, since the trial court's instruction to the jury in reference to this evidence indicated that the court had determined the voluntariness of these statements pretrial, the jury was "unduly influenced in its determination" of this issue. We disagree.

■ This Court has consistently held that, in reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977). Error cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that controls. See *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972).

■ In this case, it is clear from reading the entire charge on the issue of voluntariness, that no prejudicial error was committed. While the trial judge mentioned the court had passed on the voluntariness of Woodward's statements in determining their admissibility, he also clearly stated the jury's obligation as factfinder to determine whether the statements were voluntarily given before considering them as evidence.

It is inconceivable that the charge as a whole had the effect of usurping the jury's function as ultimate factfinder. The following excerpt from the charge places the disputed statement in context:

"Now, this type of evidence was introduced—and, of course, this evidence was introduced after the Court has had an opportunity to pass upon the voluntary nature of these statements that the defendant made to these police

2. A killing in the perpetration of a robbery or an attempted robbery was murder of the first degree under the law in force in 1972. See Act of June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701 (1963).

officers—and it is the Commonwealth's position that these statements that were made, . . . if believed, would indicate certain complicity insofar as this defendant is concerned . . . .

"Before considering, however, the truthfulness of such statements that he made regarding this matter, you must first determine whether such a statement was freely and voluntarily made by the defendant, without any inducement or expectation of any promised benefit, or by the fear of any threatened injury. [I]f you believe that defendant in fact gave these statements freely and voluntarily, without any inducements of any kind, that he knew at the time that he was being investigated as a suspect for the commission of this crime, then you may arrive at the conclusion that any statement that the defendant gave to police was freely and voluntarily made. On the other hand, if you entertain any doubt, any reasonable doubt, as to the voluntary character of the statements made by the accused to the police, it is your duty to resolve that doubt in favor of the defendant . . . . You may believe a part of it, some of it, or none of it . . . . If you find from the evidence that this defendant was coerced or compelled, by reason of any force or violence or threat or intimidation of any kind, . . . this would not be his voluntary act, and you have a right to ignore it, and you should ignore it entirely and give no consideration to that whatever. But if, on the other hand, you find that these admissions were voluntarily given, then you give it consideration along with the other evidence that has been introduced in this case."

Woodward also maintains he was unduly prejudiced and thereby denied a fair trial by the evidentiary use of two black and white photographs showing the bloodied body of the victim as it was found on the scene after the fatal shooting. The court permitted use of these photographs, over objection, not only to corroborate the testimony of the medical pathologist, but also for the additional purpose of

"aiding and providing the jury with an overall view of the scene of the crime and the position of the body in relation to it."

As we have said multiple times, the admission of such photos is largely within the sound discretion of the trial court, and its ruling will not be overruled on appeal unless there is an abuse of that discretion. *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974).

Here the challenged photographs had evidentiary value, and were neither gruesome nor inflammatory. A photograph of a corpse is not necessarily inflammatory. *Commonwealth v. Batty*, 482 Pa. 173, 393 A.2d 435 (1978). Under the circumstances, no reversible error resulted.

Finally, Woodward contends the evidence identifying him as the felon was insufficient to charge him "with responsibility." A reading of the record readily discloses this is without merit. While the identification testimony was not positive in nature, this went to the weight thereof and was for the jury. *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973). Additional evidence established that Woodward was taken into custody fleeing from the scene with a gun in his possession, and that this gun fired the fatal shot.

Judgment of sentence affirmed.

MANDERINO, J., filed a dissenting opinion in which ROBERTS, J., joined.

MANDERINO, Justice, dissenting.

I dissent. The influence of a judge is such that once a jury has heard the judge's previous ruling on a crucial matter, it cannot be said that no juror was influenced. The prejudicial effect of the trial judge's statement could not be

rectified by his subsequent proper instructions concerning the function of the jury in assessing the evidence. The error cannot be considered harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

In order to preserve a defendant's right to a fair trial, the trial judge must be careful to remain *absolutely* impartial, and he or she must not usurp the function of the jury as the ultimate fact finder. *Commonwealth v. Jones*, 452 Pa. 569, 308 A.2d 598 (1973); *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972); *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924). The United States Supreme Court in *Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350, 354 (1946), stated:

"'The influence of the trial judge on the jury is necessarily and properly of great weight,' . . . and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word."

It is vital that the trial judge avoid comments which would be taken as indicating the court's opinion on the question of guilt or innocence. *Commonwealth v. Crawford*, 452 Pa. 326, 305 A.2d 893 (1973). ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge, § 5.6(a) at 68 (Approved Draft, 1972).

The concern repeatedly expressed by this Court in connection with statements made by the trial judge is born from the practical realization of the influence a judge is capable of exerting over a jury by virtue of his exalted position. In *Commonwealth v. Archambault*, we stated:

"An expression by the judge that in his opinion the accused is guilty leaves an indelible imprint on the minds of the jury. The jury is undoubtedly going to attribute to the judge, because of his experience in criminal cases, special expertise in determining guilt or innocence."

448 Pa. at 95, 290 A.2d at 75.

8

Although the judge's expression was not an expression of his opinion as to the guilt or innocence of the accused, it was a comment going to a crucial matter, namely the voluntariness of certain statements to the police. The trial judge did not express an opinion as to guilt but he did infer that he had already ruled the statements to be voluntary. In actuality the trial judge's ruling on voluntariness was only a ruling on the admissability of the evidence and not a determination as a fact finder of a final matter.

I am cognizant of the fact that in evaluating the correctness of instructions to the jury, the charge must be read and considered as a whole. *Commonwealth v. Lesher*, 473 Pa. 141, 373 A.2d 1088 (1977). Yet, in a case such as this one, where the judge has revealed his own ruling, later statements to the jury telling them that they are the sole fact finders do not diminish the impact of the judge's prior statements. Unquestionably, after hearing the judge's previous finding of voluntariness, it cannot be said that no juror was influenced and there was no error.

The majority also finds no error in the admission into evidence of two photographs. These photographs depicted the blood splattered body of a male lying on the floor surrounded by pools of blood. Not only were his hand and hair caked with blood but blood soaked towels were also visible. The pictures were no less than gory. Although there has been some disagreement in this Court as to the admissibility of photographs of corpses, even under the majority rule established in *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974) these photographs were not "of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." Since the pictures showed only a body on the floor they could not have aided or provided the jury "with an overall view of the scene of the crime." I can see no value in admitting them to "corroborate the testimony of the medical pathologist." I am confident the jury would

have believed the victim was indeed dead without being subjected to these inflammatory pictures.

ROBERTS, J., joins in this dissenting opinion.