J-S17002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GEORGE F. ELY, JR. | |
| Appellant | No. 1756 WDA 2014 |

Appeal from the PCRA Order July 17, 2007
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0002786-1996

BEFORE:  GANTMAN, P.J., SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:            **FILED APRIL 04, 2016**

Appellant, George F. Ely, Jr., appeals *nunc pro tunc* from the order entered in the Washington County Court of Common Pleas, dismissing his first petition under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court's opinion fully sets forth the relevant facts and procedural history of this appeal.  Therefore, we will only briefly summarize them here.  Appellant was involved in a contract killing in 1985, where the victim sustained a single gunshot to the head.  After an eleven-year investigation, state police arrested Appellant, who was then serving a sentence in federal prison.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

_____

*Former Justice specially assigned to the Superior Court.

On September 26, 1997, [Appellant] entered an open general plea to criminal homicide and criminal conspiracy to commit homicide for his participation in a 1985 contract killing. In exchange for his full cooperation concerning his and other conspirators' involvement, the Commonwealth agreed not to seek the death penalty. The court conducted a full and extensive oral colloquy, after which the court found a factual basis for the plea and that [Appellant] knowingly, intelligently and voluntarily entered said plea.[2] [Appellant] also waived his right under Pa.R.Crim.P. 704(A)(1) to be sentenced within ninety days so that he could comply with his plea agreement and offer testimony against his known co-conspirator, John Dino Martin. Martin's case did not conclude until July 29, 2003, at which time Martin was sentenced to 5-10 years' imprisonment for criminal conspiracy to commit homicide on a negotiated plea bargain. On August 1, 2003, the court issued an order scheduling [Appellant's] degree of guilt hearing for September 10-11, 2003.

[2] The record included the notes of testimony from the guilty plea colloquy, but no written guilty plea colloquy form.

On August 28, 2003, [Appellant] filed a motion to withdraw his guilty plea and a motion to dismiss the charges for violation of Rule 704. On September 10, 2003, both motions were considered and denied. At the degree of guilt hearing on September 11, 2003, [Appellant] was found guilty of murder in the first degree and criminal conspiracy to commit homicide, and sentenced to life in prison.[3] A timely post-sentence motion was filed and denied….

[3] This includes a sentence of 5-10 years' imprisonment for criminal conspiracy to commit homicide, to run concurrently.

*Commonwealth v. Ely*, No. 718 WDA 2004, unpublished memorandum at 1-2 (Pa.Super. filed July 28, 2005). On July 28, 2005, this Court affirmed the judgment of sentence; our Supreme Court denied Appellant's petition for

allowance of appeal on March 8, 2006. *See Commonwealth v. Ely*, 587 Pa. 683, 897 A.2d 451 (2006).

On June 30, 2006, Appellant timely filed a *pro se* PCRA petition. The court appointed counsel, who filed an amended petition on November 27, 2006, raising multiple claims of plea counsel's ineffectiveness. On June 15, 2007, the PCRA court issued notice of its intent to dismiss the petition without a hearing, pursuant to Pa.R.Crim.P. 907. Appellant did not respond to the Rule 907 notice, and the court denied PCRA relief on July 17, 2007. Counsel filed a *praecipe* to withdraw as counsel on September 14, 2007.

On November 24, 2010, Appellant filed a "motion for re-sentencing *nunc pro tunc*." Over one year later, the court appointed counsel who filed a second PCRA petition on December 14, 2012, requesting reinstatement of Appellant's appellate rights related to his first PCRA petition. On October 3, 2014, the court reinstated Appellant's right to appeal *nunc pro tunc* the denial of his first PCRA petition. The court also appointed appellate counsel. Appellant timely filed a notice of appeal on October 22, 2014. On October 27, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on November 3, 2014.

Appellant raises five issues for our review:

> WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS
> DISCRETION IN DENYING APPELLANT'S CLAIM THAT
> [PLEA] COUNSEL WAS INEFFECTIVE FOR FAILURE TO

INVESTIGATE AND PRESERVE EVIDENCE IN THE CASE AGAINST APPELLANT?

WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S CLAIM THAT [PLEA] COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST AND OBTAIN DISCOVERY MATERIAL?

WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S CLAIM THAT [PLEA] COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE ELEVEN YEAR LAPSE OF TIME BETWEEN THE DATE OF THE CRIME AND APPELLANT'S ARREST?

WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S CLAIM THAT [PLEA] COUNSEL WAS INEFFECTIVE BECAUSE HE PROVIDED ERRONEOUS ADVICE AS TO THE DURATION OF THE SENTENCE AND THAT APPELLANT'S PLEA OF GUILTY WAS UNLAWFULLY INDUCED?

WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS DISCRETION IN DENYING APPELLANT'S CLAIM THAT EXCULPATORY EVIDENCE EXISTED WHICH WAS UNAVAILABLE AT THE TIME OF THE PLEA AND/OR SENTENCING AND HAS SUBSEQUENTLY BECOME AVAILABLE AND WOULD HAVE CHANGED THE OUTCOME?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Lane*, 81 A.3d 974 (Pa.Super. 2013), *appeal denied*, 625 Pa. 658, 92 A.3d 811 (2014). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal*

- 4 -

*denied*, 593 Pa. 754, 932 A.2d 74 (2007). A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *See Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012) (citing *Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541, 543 (1997)); Pa.R.Crim.P. 907.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, ___ (1984). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). Counsel is presumed effective, and the petitioner's failure to satisfy any prong of the ineffectiveness test will cause the claim to fail. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008).

"The threshold inquiry in ineffectiveness claims is whether the

issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." **Commonwealth v. Pierce**, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." **Id.** at 524, 645 A.2d at 194-95. If there is no reasonable basis for counsel's action, we must move to the final point of analysis under **Strickland/Pierce**—prejudice. **Kimball, supra**. A petitioner raising an ineffectiveness claim is required to show counsel's ineffectiveness was of such magnitude that it "could have reasonably had an adverse effect on the outcome of the proceedings." **Pierce, supra** at 162, 527 A.2d at 977. In other words, there must be a reasonable probability that, but for counsel's error, the outcome of the proceedings would have been different. **Commonwealth v. Cox**, 581, Pa. 107, 125, 863 A.2d 536, 546 (2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Commonwealth v. Chambers**, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002).

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." **Commonwealth v. Bedell**, 954 A.2d 1209, 1212 (Pa.Super. 2008), *appeal denied*, 600 Pa. 742, 964 A.2d 893 (2009). To obtain relief on allegations of ineffectiveness in connection with a guilty plea, the defendant must show counsel's deficient performance caused the

- 6 -

defendant to enter an unknowing, involuntary, or unintelligent plea. *Commonwealth v. Allen*, 557 Pa. 135, 144, 732 A.2d 582, 587 (1999). "A plea is knowing, intelligent and voluntary…if the defendant had an understanding of the nature of the charges against him, his right to a jury trial and the consequences of his plea." *Commonwealth v. Flannigan*, 578 Pa. 587, 625, 854 A.2d 489, 512 (2004). A reviewing court should consider the totality of the circumstances when assessing the voluntariness of the plea. *Id.* at 626, 854 A.2d at 513.

Significantly, however, claims of ineffective assistance of counsel are not self-proving. *Commonwealth v. Jones*, 571 Pa. 112, 127-28, 811 A.2d 994, 1003 (2002). Ineffective assistance of counsel claims must be pled with specificity, *i.e.*, with enough facts to support the allegations; courts will not consider ineffectiveness of counsel claims in a vacuum. *Commonwealth v. Thomas*, 560 Pa. 249, 256, 744 A.2d 713, 716 (2000). A petitioner must identify facts and, if they do not appear of record, provide evidence proving the alleged facts to support an averment of counsel's ineffectiveness for failing to file an appeal (or in this case failing to withdraw a guilty plea); otherwise the claim lacks arguable merit. *Commonwealth v. Collins*, 546 Pa. 616, 622, 687 A.2d 1112, 1115 (1996). A PCRA evidentiary hearing is not meant to be a fishing expedition for any possible evidence that might support some bare assertion of ineffectiveness of counsel. *Jones, supra* at 128 n.8, 811 A.2d at 1003 n.8.

After a thorough review of the record, Appellant's brief, the applicable law, and the well-reasoned opinion of the Honorable Katherine B. Emery, we conclude Appellant's issues merit no relief. The PCRA court's opinion fully discusses and properly disposes of Appellant's issues on appeal. (*See* PCRA Court Opinion, filed December 29, 2014, at 7-14) (finding: **(1)** Appellant's claim lacks particularity with regard to whom or what his counsel failed to investigate; Appellant's claim fails as undeveloped; moreover, Appellant cannot show how counsel's failure, if true, prejudiced Appellant; overwhelming evidence against Appellant includes his signed confession and subsequent 73-page guilty plea colloquy, as well as eyewitness testimony that linked Appellant to vehicle seen leaving crime scene, and testimony at preliminary hearing which indicated Appellant had knowledge of and admitted involvement in homicide; Appellant's claim that plea counsel failed to preserve evidence does not state what evidence counsel allegedly failed to preserve or how Appellant suffered prejudice; **(2)** Commonwealth provided discovery to plea counsel; Appellant failed to offer proof that Commonwealth withheld any evidence; Appellant's claim that counsel failed to request and obtain discovery material is undeveloped; **(3)** even if Appellant was prejudiced by lapse of time from crime to his arrest, Appellant's claim still fails because he failed to provide evidence to indicate misconduct by prosecution; at worst, eleven-year delay between commission of offense and Appellant's arrest is attributable to prosecutorial or investigative negligence,

which is insufficient to establish claim of due process violation due to pre-arrest delay; underlying claim lacks merit, so Appellant's ineffective assistance claim also fails; **(4)** Appellant has offered no evidence to suggest plea counsel failed to inform Appellant that he could be sentenced to life imprisonment; Appellant's plea colloquy belies Appellant's claim, as court explicitly informed Appellant he could be sentenced to life imprisonment if convicted of first degree murder; Appellant's plea transcript refutes Appellant's claim that his plea was involuntary, unknowing, or unintelligent; Appellant advances only bald, unsupported allegations that his plea was unlawfully induced; Appellant's dissatisfaction with cohort's sentence is not fair and just reason to allow withdrawal of Appellant's guilty plea; **(5)** Appellant's "newly discovered exculpatory evidence" consists of preliminary hearing witness' guilty plea to charges of theft and tampering with records; witness' guilty plea occurred several years before she testified against Appellant; Appellant's evidence is neither new nor exculpatory, but merely impeachment evidence that was available to Appellant at time of his guilty plea). The record supports the PCRA court's decision; therefore, we see no reason to disturb it. Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/4/2016

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | |
| | ) | |
| vs. | ) | NO. CR - 2786 - 1996 |
| | ) | |
| GEORGE ELY, JR., | ) | |
| | ) | |
| Petitioner | ) | |

## **O R D E R**

AND NOW, this __17th__ day of July, 2007, pursuant to the Court's Order dated June 15, 2007, the Court not having received a response within twenty (20) days from the Petitioner, George Ely, Jr., to the Court's Notice of Intent to Dismiss Post Conviction Relief Act Petition, as amended, said Petition is dismissed.

BY THE COURT:

 _____ S.J.
JOHN F. BELL, Senior Judge



To:    George F. Ely, Jr. by Certified Mail; District Attorney, Mary R. Bates, Esquire; File

## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,    )

vs.    )    No.    2786-1996

GEORGE F. ELY, JR.,    )

Defendant.    )

## OPINION PURSUANT TO Pa. R.A.P. 1925(a)

George Ely appeals *nunc pro tunc* from Judge John Bell's July 2007 order denying relief

under the Post-Conviction Relief Act (PCRA). This opinion is written pursuant to Rule 1925(a)

of the Pennsylvania Rules of Appellate Procedure.

### BACKGROUND

The factual and procedural history of this case spans a period of nearly thirty years from

the commission of the offense to this appeal and is – to put it mildly – complicated. The

following is a timeline of events leading to this appeal.

### *The Crime, Arrest, and Confession*

On March 11, 1985, Robert Dickinson was killed by a single gunshot wound to the head

in the parking lot of the Somerset Inn in Washington County, Pennsylvania. After an eleven year

investigation into this crime, on November 22, 1996, the Pennsylvania State Police (PSP)

arrested George Ely on homicide and conspiracy charges at the federal penitentiary at Lewisbug

– where Ely was serving a twenty year sentence for a R.I.C.O. conviction. Officer Maggi of the

PSP "Mirandized" Ely at Lewisburg and obtained from Ely a written waiver of his Miranda

rights. Omnibus Pre-Trial Motion Transcript, Apr. 21, 1997, p.4. The same day, Maggi

1



transported Ely to the state police barracks in Washington where Ely *again* signed a formal waiver of his Miranda rights and provided detailed oral and written statements concerning his involvement, and the involvement of John Dino Martin, in the Dickinson homicide. *Id.* at 10-11, 94. Ely indicated in his statement that on the night of the homicide, he drove Martin to the Somerset Inn, remained in the car while Martin waited outside of the bar for Dickinson, observed Dickinson lying on the ground after being shot by Martin, and then drove Martin back to Steubenville, Ohio. Degree-of-Guilt Transcript, Sept. 10 and 11, 2003, pp. 100–101. Ely was arraigned on charges of homicide and conspiracy to commit homicide shortly after providing these statements.

### Ely's Motion to Suppress

In March of 1997, Ely filed an Omnibus Pre-Trial Motion requesting suppression of the oral and written statements given to Maggi alleging that they were involuntary and coerced based on (1) Maggi's promise of leniency, (2) false information set forth in Maggi's affidavit of probable cause, and (3) unnecessary delay between his arrest and arraignment. Omnibus Pre-Trial Motion dated 3/17/97, p.7. Following a suppression hearing on these issues, Judge Bell determined that (1) there was "no evidence of inducement on the part of Trooper Maggi by promising leniency to [Ely]," (2) Ely's statements were not induced by false information in the affidavit of probable cause, and (3) Ely's statements were not involuntarily made due to unnecessary delay because Maggi's "unrefuted testimony" established that no custodial interrogation occurred during Ely's transport to Washington, PA. Op. and Order dated 5/21/97, J. John F. Bell pp. 5-8. Following Judge Bell's ruling, on September 26, 1997, Ely pleaded guilty to an open charge of homicide and criminal conspiracy and agreed to fully cooperate with the prosecution in exchange for the Commonwealth's agreement to not seek the death penalty.

2

*The Plea Hearing*

At Ely's plea hearing before Judge Bell,[1] Washington County District Attorney John C. Pettit recounted the above details of Ely's involvement in the Dickinson homicide for the Court, along with details of many other crimes previously committed by Ely. Plea Transcript, Sept. 26, 1997, pp 6-29. Ely admitted before the Court his involvement in the homicide and affirmed the truthfulness of his statements previously provided to Officer Maggi. *Id.* at 67-68. Consequently, the Court found a factual basis for Ely's plea and after extensive discussion with Ely concerning his state of mind and his ability to understand the rights waived by his plea, determined that he knowingly, intelligently, and voluntarily entered into it. Ely further affirmed to the Court (1) the *only* thing promised to him in exchange for his plea was Pettit's agreement to not seek the death penalty, and (2) that he would fully assist in prosecuting any other individuals involved in the Dickinson homicide. *Id.* at 68-70. As a result of Ely's cooperation, Martin pleaded guilty to criminal conspiracy and was sentenced in July of 2003 to 5-10 years of imprisonment.

*Ely's Motion to Withdraw Plea and the Degree-of-Guilt Hearing*

Shortly after Martin's sentencing – which completed Ely's required cooperation with the Commonwealth – a degree-of-guilt hearing was set for Ely on September 10, 2003 before Judge Bell. However, less than two weeks before his degree-of-guilt hearing, and apparently because of Martin's light sentence, Ely filed (1) a motion to dismiss all charges based on violation of Pa. R. Crim. P. 704 and (2) a motion to withdraw his guilty plea. In his motion to withdraw his guilty plea, he alleged that he was factually innocent and that his confession to Maggi was the product of "psychological duress." Degree-of-Guilt Transcript, p.31.[2] The Court denied both motions, finding that (1) Ely's plea was voluntarily made, and the result of an informed decision in light

---

[1] Ely was represented by attorney Dennis R. Paluso at his plea hearing.
[2] Judge Bell held a hearing on Ely's motion to withdraw and motion to dismiss on September 10, and after denying these motions, held a degree-of-guilt hearing the following day.

3

of the Commonwealth's "overwhelming evidence",[3] and (2) that Ely waived his right to be sentenced within ninety days under Rule 704 so that he could take advantage of the plea bargain offered by the Commonwealth. *Id.* at 27, 44. The following day, Judge Bell found Ely guilty of murder in the first degree and criminal conspiracy to commit homicide, and sentenced him to life in prison.

### *Ely's Post-Sentence Motions and Appeal*

Less than a month after his sentencing, Ely filed post-sentence motions seeking to vacate Judge Bell's order denying the above motions. Judge Bell again denied both motions, determining that (1) Ely waived Rule 704 and (2) the motivating factor behind Ely's motion to withdraw his guilty plea was not his actual innocence, but rather his displeasure with his plea bargain after learning of Martin's relative light sentence. Op. and Order dated 3/30/2004, J. John F. Bell p. 9-11. Ely appealed Judge Bell's decision to the Pennsylvania Superior Court, who determined in an unpublished memorandum opinion that Judge Bell correctly denied (1) the motion to withdraw because the "73–page oral colloquy confirms Ely knowingly and voluntarily admitted his guilt" and (2) the motion to dismiss because Ely voluntarily waived his rights under Rule 704. Superior Court Memorandum and Order dated 7/28/05, at 718 WDA 2004. Ely filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania, and this petition was denied on March 8, 2006.

---

[3] The evidence included (1) Mr. Ely's oral and written confession, (2) eyewitness testimony from Jodie Wright linking Mr. Ely to a vehicle seen leaving the scene of Mr. Dickinson's murder immediately following a gunshot, and (3) testimony from Mr. Ely's former girlfriend concerning his possession of the means to commit the murder ie. a rifle with a scope, his knowledge of and admitted involvement in the Dickinson murder, and his receipt of money and purchase of expensive items following the Dickinson murder. Degree-of-Guilt Transcript, pp. 51-60, 71-79; Preliminary Hearing Transcript, Dec. 4, 1996, p. 49.

4

*Ely's First PCRA Petition*

Ely filed a *pro se* PCRA petition in June of 2006, raising a variety of ineffective assistance of counsel claims and also alleging, *again*, that his guilty plea was unlawfully induced. Following the appointment of attorney Jeffrey Watson in September, Judge Bell ordered Ely to file an amended petition setting forth "with particularity" the above claims. Watson filed an amended petition in November and the Commonwealth filed an answer one month later, arguing that Ely's valid guilty plea negated any ground for relief based on ineffective assistance of counsel. On June 15, 2007 Judge Bell issued an order noticing his intention to dismiss Ely's petition without a hearing unless Ely responded within twenty days and established a right to relief under sections 9543(a)(3) and 9543(a)(4) of the Act (relating to whether issues were previously litigated). After receiving no response from Ely, Judge Bell issued a final order of dismissal on July 17, 2007. [4] This order did not make reference to Ely's appellate rights, and there is no indication that Watson informed Ely of these rights – or contacted him at all – prior to withdrawing from representing Ely via praecipe on September 14, 2007.

*Ely's Motion for Nunc Pro Tunc Sentencing Order and Second PCRA Petition*

Ely remained silent in state courts until November 24, 2010,[5] when he filed a Motion for *Nunc Pro Tunc* Sentencing Order – *still* claiming he was "unlawfully induced into a guilty plea" and that he is "actually innocent" based on an unidentified "unique set of circumstances [that] came to light during the trial of his co-defendant." Ely attached to this motion nearly twenty letters to various organizations and individuals attempting to enlist their help in appealing the

---

[4] Neither the Commonwealth's answer nor Judge Bell's final order addressed Ely's claims on their merits.

[5] On January 2, 2008, Ely filed a *habeas corpus* petition in the Western District of Pennsylvania, raising essentially the same claims that he raised in his amended PCRA. In a memorandum opinion dated May 1, 2009, Magistrate Judge Amy Hay found that Ely procedurally defaulted on these claims and did not address their merits. *Ely v. Attorney Gen. of Pennsylvania*, No. 2009 WL 1248057 (W.D. Pa. May 1, 2009).

denial of his initial PCRA petition. Eventually, on January 7, 2011, Judge Paul Pozonsky appointed Daniel Chunko to represent Ely, and Chunko filed a second PCRA petition on December 14, 2012. [6] The second PCRA claimed that attorney Watson was ineffective in failing to advise Ely of his appellate rights related to the denial of his *first* petition, and also alleged that Ely was unlawfully induced into pleading guilty and that exculpatory evidence now exists that was unavailable at trial – though this petition, and every other filing submitted by Ely, lacks particularity as to the nature of this evidence or any facts tending to establish its *actual* existence.

### Ely's Appellate Rights are Restored

After a review of this case, in an order dated October 3, 2014, this Court restored Ely's appellate rights *nunc pro tunc* as to his first PCRA petition, finding that Ely was not made aware of his appellate rights as to that petition[7] and appointed Mary R. Bates to represent Ely. On November 14, Bates filed a Concise Statement of Matters Complained on Appeal which is the subject of this opinion.

### ISSUES ON APPEAL

In his Amended PCRA, Ely asserts that he is eligible for relief under the following subsections of the act:

> (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

> (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

> (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

---

[6] The merits of Ely's second PCRA petition were never addressed because this Court's October 3, 2014 order restoring Ely's appellate rights as to his *first* petition effectively "mooted" the second one.
[7] Ely was incarcerated in West Virginia throughout his PCRA proceedings and did not receive notice of any appeal rights which were apparently sent to the Pennsylvania Department of Corrections.

42 Pa.C.S. § 9543(a)(2). In his Concise Statement of Matters Complained on Appeal, Ely raises six distinct ineffective assistance of counsel claims, an unlawful inducement claim, and a newly discovered exculpatory evidence claim. We will address them individually.

## I.    Ineffective Assistance of Counsel

The standard applicable to ineffective assistance of counsel claims is well worn; to succeed on such a claim, Ely must plead and prove by a preponderance of the evidence that (1) the underlying claim has arguable merit, (2) counsel did not have a reasonable basis for his action or inaction, and (3) he suffered prejudice, or in other words – a reasonable probability that the outcome of the proceedings would have been different, as a result of this action or inaction. *Com. v. Steele*, 961 A.2d 786, 797 (Pa. 2008). Counsel is presumed to be effective and Ely bears the burden of proving otherwise. *Com. v. Harris*, 972 A.2d 1196, 1203 (Pa. Super. 2009). Where it is clear that he has failed to meet any one of the three prongs, his claim may be disposed of on that basis alone – without a determination of whether the other two prongs have been met. *Steele*, at 797.

We also note that ineffective assistance of counsel claims are not self-proving, and Ely cannot prevail on undeveloped claims consisting of boilerplate allegations. *Id.* (internal quotations and citations omitted); *see also Com. v. Pierce*, 786 A.2d 203, 221 (Pa. 2001) (petitioner cannot prevail on an ineffective assistance claim absent an "analysis of the record or specific allegations of how [counsel's] failure . . . prejudiced him."). Most of Ely's ineffective assistance claims suffer from this defect.

7

*1. The Trial Court Erred and Abused its Discretion in Denying Defendant's Claim that Trial Counsel Was Ineffective for Failure to Appeal the Trial Court Order of July 15, 2007 Denying Post Conviction Relief*

This claim of error is premised on a factual misstatement. The trial Court never denied Ely's claim that attorney Watson, the PCRA counsel (*not* trial counsel), was ineffective for failing to appeal Judge Bell's July 2007 order. In fact, no court ever addressed this claim because it was raised only in Ely's *second* PCRA petition – which was effectively mooted when this Court restored his rights as to his first petition. In any event, the only remedy for this error would be restoration of Ely's appellate rights, which has already been ordered by this Court. Thus, we have no occasion to address this claim.

*2. The Trial Court Erred and Abused its Discretion in Denying Defendant's Claim that Trial Counsel Was Ineffective Because he Failed to Investigate the Case and Interview Witnesses Identified by the Defendant*

Ely's amended PCRA petition claims that "Paluso failed to investigate this matter prior to the plea and failed to interview various witnesses identified by Defendant." His *pro se* petition is slightly more elaborate – claiming that "Paluso never investigated anything in this case. I told him numerous things I wanted checked out and never received a response." Ely "supports" this claim in his *pro se* petition with a string cite of six cases from various federal courts – only one of which, *Thomas v. Lockhart*, 738 F.2d 304 (8th Cir. 1984), addresses an ineffective assistance claim in the context of a guilty plea. *Lockhart* offers Ely no help however because the attorney's conduct there was infinitely more egregious than "failing to investigate" and included (1) informing his client that he would have to prove his innocence at trial, (2) informing his client, a black man, that a jury would never believe his testimony over the testimony of his white victim, and (3) failing to investigate his client's documented history of mental illness – from which he was suffering at the time of plea.

8

In any event, Ely has not pleaded with any degree of particularity who or what his counsel failed to investigate, and more importantly, he *cannot* plead how this failure, if true, prejudiced him. Accordingly, this claim fails as undeveloped.

Even so, the evidence against Ely is overwhelming and includes (1) his signed confession and subsequent 73-page plea colloquy confirming its veracity, (2) Jodie Wright's testimony linking him to a vehicle seen leaving the scene the Dickinson homicide, and (3) Stephanie Kirkpatrick's testimony indicating his knowledge of, and admitted involvement in,[8] the homicide.

3. *The Trial Court Erred and Abused its Discretion in Denying Defendant's Claim that Trial Counsel Was Ineffective Because he Failed to Request and Obtain Discovery Material*

Ely claims in his *pro se* petition that the Commonwealth "denied" Paluso's request for discovery, which is entirely different from the claim he raises in his amended petition – that Paluso failed to request discovery. In his *pro se* petition, Ely relied on two Supreme Court cases granting a defendant relief based on the government's withholding of evidence, but ignores the fact that the defendants in these cases were able to establish actual prejudice: that disclosure would have produced a different result at trial. At any rate, discovery *was* provided to Ely's counsel, and Ely has offered no proof that evidence was withheld. This claim is undeveloped.

4. *The Trial Court Erred and Abused its Discretion in Denying Defendant's Claim that Trial Counsel Was Ineffective Because he Failed to Preserve Evidence*

This claim similarly fails as undeveloped because Ely has not pleaded what evidence went unpreserved or how it could possibly have prejudiced him.[9]

---

[8] Stephanie Kirkpatrick testified at Ely's preliminary hearing that, after viewing a news story concerning the Dickinson homicide, Ely stated to her that Dickinson "was the guy that John [Martin] took care of." Preliminary Hearing Transcript, Dec. 4, 1996, p. 49.

[9] Ely does claim in his *pro se* petition that the deaths of Lewis Still and James Ely prejudiced his defense, but he fails to allege *how*.

9

*5. The Trial Court Erred and Abused its Discretion in Denying Defendant's Claim that Trial Counsel Was Ineffective Because he Failed to Object to the Lapse of Time From the Date of the Crime to the Arrest*

The underlying claim here is pre-arrest delay, a due process claim. To succeed on this claim, Ely must demonstrate that (1) the delay caused him actual prejudice, or in other words, substantially impaired his ability to defend against the charges, and (2) the delay was the product of intentional, bad faith, or reckless conduct by the prosecution. *Com. v. Scher*, 803 A.2d 1204, 1221 (Pa. 2002) (twenty year delay in homicide prosecution does not violate due process).

We will assume, *arguendo*, that Ely was prejudiced, as he claims, by the lapse of time from offense to arrest. Even so, his claim fails because there is no evidence indicating misconduct by the prosecution. *At worst*, the eleven year delay between the commission of the offense and Ely's arrest is attributable to prosecutorial or investigative negligence, which is not sufficient to establish a claim under *Scher*. Because his underlying claim lacks merit so does his ineffective assistance claim.

*6. The Trial Court Erred and Abused its Discretion in Denying Defendant's Claim that Trial Counsel Was Ineffective Because he Gave Erroneous Advice as to the Duration of the Sentence*

To succeed on this claim, Ely must establish that but for Paluso's alleged failure to advise, the outcome would have been different. But Ely cannot escape the fact that the outcome, *at least* life in prison, would have been the same, no matter what his plea, because the evidence against him was simply overwhelming. Ely appears to suggest here that he would not have pleaded guilty had he been advised of the possible sentence.

No evidence exists to suggest that Paluso failed to inform Ely that he might be sentenced to life. In fact, Ely's plea colloquy – during which Judge Bell explicitly informs him that he

10

might be so sentenced if found guilty of first-degree murder – belies this undeveloped claim. Degree-of-Guilt Transcript, p. 60.

## II.    Plea of Guilty Unlawfully Induced

A defendant has no absolute right to withdraw a guilty plea,[10] and the decision to grant such a motion lies within the sound discretion of the trial court. *Com. v. Muhammad*, 794 A.2d 378, 382 (Pa. Super. 2002). More to the point, a plea bargain should not be set aside in the absence of convincing evidence that the appellant was dealt with indecently or unfairly, and the appellant must demonstrate manifest injustice, in other words involuntariness, to void a plea based on unlawful inducement. *Com. v. Hare*, 380 A.2d 330, 333 (Pa. 1977).

*7.  The Trial Court Erred and Abused its Discretion in Denying Defendant's Claim that his Plea of Guilty was Unlawfully Induced, Made Involuntary and Unknowing*

Ely claims in his amended PCRA that his plea was involuntary based on the following, apparently independent, premises (1) District Attorney Pettit promised a sentence of ten to twenty years imprisonment in exchange for the plea, (2) the plea colloquy did not advise him of permissible sentencing range, (3) Paluso gave erroneous advice as to the duration of his sentence, and (4) Paluso failed to advise him of grounds to suppress incriminatory evidence. (1), (2), and (3) are directly contradicted by Ely's plea colloquy set out below. (4) is likewise not supported by the record; Paluso actually filed a suppression motion.

At the outset, we note that the Superior Court has already determined that Ely knowingly and voluntarily entered into the plea agreement, and that he offered no just reason for attempting

---

[10] The standard for allowance of withdrawal is different depending on whether the defendant moves for withdrawal pre-sentence or post-sentence. Ely moved both pre-sentence and post-sentence but, as the Superior Court has already determined, he is unable to meet even the less demanding standard – that his withdrawal request is supported by a "fair and just" reason. Ely filed his pre-sentence motion six years after pleading guilty and did so only a week after, *and because of*, Martin's relatively light sentence. Dissatisfaction with an associate's sentence is not a fair and just reason for withdrawal.

11

to withdraw from it.[11] We also note that such determinations of voluntariness are entitled to a presumption of correctness, *Siers vs. Ryan*, 773 F.2d 37, 42 (3rd Cir. 1985), and that voluntary and intelligent guilty pleas made under the advice of competent counsel may not be collaterally attacked. *Mabry vs. Johnson*, 467 U.S. 504, 507-508, (1984).

This precedent notwithstanding, Ely's specific claims of involuntariness raised here, or any other involuntariness claim raised elsewhere on a different factual premise, are simply not supported by the record. The following unambiguous exchange between Judge Bell and Ely during Ely's plea colloquy undermines *any* claim of involuntariness:

THE COURT:     Knowing all this [rights waived], you want to enter a plea of guilty then to a general homicide charge. Is that correct?

THE DEFENDANT:     Yes, sir.

THE COURT:     And a criminal conspiracy charge?

THE DEFENDANT:     Yes, sir.

THE COURT:     Is that right?

THE DEFENDANT:     Yes, sir.

THE COURT:     You're doing that on your own free will?

THE DEFENDANT:     Yes, sir.

THE COURT:     No one has put thumb screws up your fingernails or pulled your hair out or twisted your arm or any type of physical abuse?

THE DEFENDANT:     No, sir.

THE COURT:     Has there been any mental coercion to enter this plea of guilty?

THE DEFENDANT:     No, sir.

THE COURT:     No one here has promised you anything than what I heard Mr. Pettit say that the only thing he is promising at this time in consideration of your plea of

---

[11] Although Magistrate Judge Hay did not adjudicate Ely's *habeas corpus* petition on the merits, she opined, "even if we were to review this issue de novo, we would find that the Petitioner's plea was knowing and voluntary . . . given that his sole argument concerning his alleged innocence is simply not borne out by the record." *Ely v. Attorney Gen. of Pennsylvania*, at *7.

12

guilty to homicide and criminal conspiracy is that he will not seek the death penalty. Is that correct?

THE DEFENDANT:     Yes, sir.

***

THE COURT:          I went over first degree, life and death. I have already explained that to you. Do you have any questions up to now?

THE DEFENDANT:     No, sir.

Plea Colloquy Transcript, at 47-48, 60. Ely has offered no evidence, beyond unsupported allegations directly contradicted by the record, to indicate even a modicum of unfairness or injustice in his plea proceedings. Accordingly, he cannot credibly claim that his plea was unlawfully induced or defective in any other respect.

## III.     Newly Discovered Exculpatory Evidence

To obtain relief based on an after-discovered evidence claim, Ely must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. *Com. v. Pagan*, 597 950 A.2d 270, 292 (Pa. 2008) (internal citations omitted).

8. *The Trial Court Erred and Abused its Discretion in Denying Defendant's Claim that Exculpatory Evidence Existed Which was Unavailable at the Time of Plea and/or Sentencing and has Subsequently Become Available and Would Have Changed the Outcome*

Ely's newly discovered exculpatory evidence, at least as far as he indicates in his *pro se* and amended petitions, consists in Stephanie Kirkpatrick's guilty plea to charges of theft and tampering with records several years *before* her testimony against Ely. This evidence is neither new nor exculpatory; it is merely impeachment evidence that was available to Ely at the time of his plea. *See Com. v. Foreman*, 55 A.3d 532, 535 (Pa. Super. 2012) (petitioner not entitled to relief where detective who testified in criminal trial was later charged with perjury because there

13

was no indication of misconduct at petitioner's trial). Even if Ely could establish that Kirkpatrick was lying, or locate other pieces of *actual* newly discovered exculpatory evidence, he could never prove that this evidence would have resulted in a different outcome. As much as he desires to do so, Ely cannot undo his voluntary confession to his involvement in the Dickinson homicide.

## CONCLUSION

The findings by the PCRA Judge John Bell that the defendant's issues on appeal were patently frivolous, not supported in law or fact, and did not entitle him to any relief, and the order dismissing the PCRA should be affirmed.

BY THE COURT:

KATHERINE B. EMERY, JUDGE

Dec. 29, 2014

14