J-S67006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLTON ROY SMITH | : | |
| | : | No. 321 EDA 2017 |
| Appellant | | |

Appeal from the PCRA Order December 15, 2016
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0002706-2011

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED NOVEMBER 01, 2017**

Appellant, Carlton Roy Smith, appeals, *pro se*, from the order entered in the Court of Common Pleas of Bucks County denying his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546.  We affirm.

We glean the underlying facts and procedural history in this matter from both this Court's September 24, 2012, memorandum decision affirming Appellant's judgment of sentence and our independent review of the certified record.

> On April 4, 2011, the police received information about a suspicious package at a Federal Express facility.  Police inspected the package, which contained 15.25 pounds of marijuana.  Police conducted surveillance and an undercover delivery to the address listed on the package.  Appellant, who did not live at that address, picked up the package and was immediately arrested.  After waiving his ***Miranda***[fn] rights and giving a statement to police, he

_____
*   Former Justice specially assigned to the Superior Court.

was charged with criminal conspiracy, criminal use of a communication facility, possession with intent to deliver, and use of drug paraphernalia. [fn]

---

[fn] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[fn] 18 Pa.C.S.A. § 903(a), 18 Pa.C.S.A. § 7512(a), 35 P.S. § 780-113(a)(30), and 35 P.S. § 781-113(a)(32), respectively. Appellant was also charged with intentional possession of a controlled substance by a person not registered, 35 P.S. § 780-113(a)(16), but that charge was *nolle prossed*.

---

Appellant filed a motion to suppress the statement he gave to police, which the court denied following a hearing on July 18, 2011. The following day, a jury convicted Appellant of the above-mentioned charges. On November 3, 2011, the court sentenced Appellant to not less than four nor more than eight years' imprisonment on the possession with intent to deliver count, and a concurrent term of not less than one year nor more than three years' imprisonment on the criminal conspiracy count. Appellant filed post-sentence motions on November 14, 2011. A post-sentence motion hearing was held on January 23, 2012, and the court denied Appellant's motions on January 27, 2012.

*Commonwealth v. Smith*, No. 550 EDA 2012, unpublished memorandum at 1-2 (Pa.Super. filed September 24, 2012).

Appellant filed a timely appeal to this Court. On September 24, 2012, this Court affirmed judgment of sentence. On February 4, 2015, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal.

On February 8, 2016, Appellant filed a *pro se* PCRA petition, his first. The PCRA court appointed counsel and directed him to file an amended PCRA petition by November 1, 2016. On November 1, 2016, PCRA counsel filed a

***Turner***/***Finley*** [1] "no merit" letter and an application to withdraw.  By order of November 4, 2016, Appellant was given twenty days to respond to counsel's "no merit" letter, but he filed no response.  On December 15, 2016, the PCRA court dismissed Appellant's PCRA petition.

On January 13, 2017, Appellant filed a *pro se* Notice of Appeal with this Court.  The PCRA court directed Appellant to provide it with a copy of the Notice of Appeal and a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. § 1925(b) no later than twenty-one days from the date of the Rule 1925(b) order, meaning that Appellant had until February 10, 2017, to file his Rule 1925(b) statement.  On May 10, 2017, Appellant filed his Pa.R.A.P. 1925(b) statement, eighty-nine days after the court-imposed deadline had passed.  On May 18, 2017, the PCRA court issued its Pa.R.A.P. 1925(a) opinion dismissing each of Appellant's nine issues on the merits.

In Appellant's Rule 1925(b) statement he raised nine issues of pretrial and trial error for our review.  These issues state as follows:

1. DID THE COMMONWEALTH, LAW ENFORCEMENT, TRIAL COURT ABUSE THERE [SIC] DISCRETION WHEN OBTAINING EVIDENCE WITH OUT [SIC] A WARRANT?

2. DID LAW ENFORCEMENT ABUSE THERE [SIC] DISCRETION IN THE SEARCH OF APPELLANT'S VEHICLE?

---

[1] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

3. DID THE COMMONWEATLH ABUSE THERE [SIC] DISCRETION WHEN ISSUEING A WARRANT FOR APPELLANT WHEN ILLEGAL ACTIVITY WAS CONDUCTED, BY THE DEA TASK FORCE?

4. DID FEDEX MANAGEMENT OF THE FEDEX SORTING FACILTY [SIC] CONTAMINATE THE EVIDENCE IN APPELLANT'S CASE WHEN MANAGEMENT ADMINISTRATIVELY OPENED FEDEX EXPRESS SAVER PARCEL?

5. DID LAW ENFORCEMENT, COMMONWEALTH ERROR [SIC] IN CONDUCTING AN ILLEGAL CONTROLLED BUY?

6. DID DEA TASK FORCE ERROR [SIC] IN THE WEIGHT OF THE EVIDENCE THAT WAS INTRODUCED AS EVIDENCE FOR THE PERPOSE [SIC] OF A CONVICTION?

7. DID THE COMMONWEALTH ERROR [SIC] IN NOT GRANTING A MOTION FOR SUPPRESSION OF EVIDENCE AT TRIAL?

8. DID THE LAW ENFORCEMENT ERROR [SIC] IN THE INTERROGATION OF APPELLANT WITHOUT COUNSEL AND APPELLANT STATES HIS MIRANDA WARNING, WHICH IS A VIOLATON OF APPELLANT'S FIFTH, SIXTH, AND FOURTHEENTH [SIC] AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS PENNSYLVANIA CONSTITUTION?

9. DID THE COMMONWEALTH ERROR IN NOT GIVING APPELLANT A NEW TRIAL FOR THE FOLLOWING STATEMENT STATED IN THIS DOCUMENT?

Appellant's Pa.R.A.P. 1925(b) Statement, filed 5/10/17. Appellant subsequently filed his appellate brief in which, for the first time, he presented all nine issues within the framework of an ineffective assistance of trial counsel claim. **See** Appellant's brief, at 4.

When examining a post-conviction court's grant or denial of relief, we are limited to determining whether the court's findings were supported by the record and whether the court's order is otherwise free of legal error. ***Commonwealth v. Quaranibal***, 763 A.2d 941, 942 (Pa.Super. 2000). We will not disturb findings that are supported in the record. ***Id.*** The PCRA provides no absolute right to a hearing, and the post-conviction court may elect to dismiss a petition after thoroughly reviewing the claims presented and determining that they are utterly without support in the record. ***Id.***

Moreover, to be eligible for post-conviction relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors or defects in 42 Pa.C.S.A. section 9543(a)(2) and that the issues he raises have not been previously litigated. ***Commonwealth v. Carpenter***, 725 A.2d 154, 160 (Pa. 1999). An issue has been "previously litigated" if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or if the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. ***Carpenter***, 725 A.2d at 160; 42 Pa.C.S.A. § 9544(a)(2), (3). If a claim has not been previously litigated, the petitioner must then prove that the issue was not waived. ***Carpenter***, 725 A.2d at 160. An issue will be deemed waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b).

Initially, we cannot ignore that all of Appellant's issues are waived because his *pro se* Rule 1925(b) statement was filed 89 days late. Specifically, on January 20, 2017, the PCRA court issued its Pa.R.A.P. 1925(b) order directing Appellant to file a concise statement of errors complained of on appeal no later than twenty-one days from the date of the court's order.[2] Appellant's concise statement was, thus, due on Friday, February 10, 2017.

Appellant did not file his Rule 1925(b) statement until Wednesday, May 10, 2017, 89 days after it was due. Appellant provided no documentation to demonstrate when he mailed that statement, so as to prove that it was timely under the "prisoner mailbox rule[,]" *see Commonwealth v. Crawford*, 17 A.3d 1279, 1281 (Pa.Super. 2011) ("Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing."), nor does the record reflect that he requested and was granted an extension of time in which to file his Rule 1925(b) statement. Nevertheless, the trial court elected to author a responsive Rule 1925(a) opinion.

This Court has held that where the trial court addresses issues raised in an untimely Rule 1925(b) statement, we may elect to address the issues on their merits rather than remand for the filing of a statement *nunc pro tunc*.

---

[2] In compliance with authority mandating how the court shall notify parties of a Rule 1925(b) order, *see Commonwealth v. Hooks*, 921 A.2d 1199 (Pa.Super. 2007), the trial court filed its Rule 1925(b) order with the prothonotary, and the prothonotary docketed the order, recorded the date it was made, gave written notice of the entry of the order to each party of record, and recorded on the docket the giving of such notice.

*See Commonwealth v. Brown*, 145 A.3d 184, 186 (Pa.Super. 2016); *Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa.Super. 2009) (*en banc*) (holding this Court may decide appeal on merits if belated concise statement did not prevent trial court from preparing opinion addressing issues raised). Such precedent, however, applies only where counseled defendants suffered *per se* ineffective assistance of appellate counsel for failing to file a timely Rule 1925(b) statement.

In contrast, "[i]t is a longstanding principle that a *pro se* litigant cannot be ineffective on his or her own behalf…. Thus, our rationale for considering an untimely Rule 1925(b) statement disappears where it is filed by a *pro se* litigant." *Commonwealth v. Boniella*, 158 A.3d 162, 164 (Pa.Super. 2017) (holding *pro se* appellant waives his or her issues by filing untimely Rule 1925(b) statement, even if the court addresses issues in its opinion). Consequently, even though the trial court elected to address the issues raised in Appellant's untimely Rule 1925(b) statement, we must deem the issues waived for our review.

Even if Appellant's Pa.R.A.P. 1925(b) statement were not untimely, the claims he raised therein would be ineligible for relief under the PCRA, as they allege pretrial or trial errors that either could have been raised on direct appeal but were not (issues 1-7, and 9) or were previously litigated to no avail on direct appeal before this Court (issue 8). *See* 42 Pa.C.S.A. § 9544, *supra* (a defendant is not entitled to PCRA relief on claims that have been previously litigated or waived). Appellant could have avoided Section 9544's bar to PCRA

eligibility had he asserted these claims of error within a collateral claim of ineffective assistance of counsel for failure to raise and preserve them for direct review, **see Commonwealth v. Collins**, 888 A.2d 564, 571 (Pa. 2005) (holding a collateral claim of ineffectiveness raises distinct issue from the underlying claim of error it addresses; underlying claim is but component part of ineffectiveness claim), but he did not do so in his Pa.R.A.P. 1925(b) statement.

Instead, only in Appellant's brief does he, for the first time, preface his nine questions presented within an overarching claim of ineffective assistance of counsel. Because Appellant failed to raise any of his ineffective assistance of counsel claims in his Pa.R.A.P. 1925(b) statement, the claims are waived. **Commonwealth v. Smith**, 146 A.3d 257, 262 (Pa.Super. 2016) (holding issue not included in Rule 1925(b) statement is waived).

Finally, had Appellant preserved his claims for review on the merits, we would still reject them. To that end, and after careful consideration of the record and the parties' briefs, we adopt as our own the thorough and well-reasoned analysis of the PCRA court. **See** Trial Court Opinion, filed May 18, 2017.

Order is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2017

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : No. CP-09-CR-0002706-2011

vs.

CARLTON ROY SMITH :

## OPINION

Appellant Carlton Roy Smith (hereinafter, "Appellant"), has filed an appeal to the Superior

Court of Pennsylvania from this Court's December 15, 2016, Order denying Appellant's Petition

under the Post-Conviction Relief Act (PCRA)[1]. This Opinion is filed pursuant to Pennsylvania

Rule of Appellate Procedure 1925(a).

## BACKGROUND

The facts of this case were discussed at length in this Court's April 16, 2012, Opinion, filed

in the context of Appellant's direct appeal, and are set forth as follows herein:

On April 4, 2011, Carlton Roy Smith (hereinafter, "Appellant") was charged with Criminal Conspiracy[2], Criminal Use of Communication Facility,[3] Possession with Intent to Deliver Marijuana (hereinafter "PWID"),[4] Intentionally Possessing a Controlled Substance by a Person Not Registered[5] and Use of Drug Paraphernalia.[6] On July 19, 2011, following a two-day jury trial, Appellant was found guilty of the following: (i) Criminal Conspiracy, (ii) Criminal Use of Communication Facility, (iii) PWID and (iv) Use of Drug Paraphernalia. On November 3, 2011, this Court imposed a sentence of not less than four nor more than eight years of incarceration for PWID. We imposed a reduced minimum

---

[1] 42 Pa. Stat. and Cons. Stat. Ann. § 9541, et al.
[2] 18 PA.C.S. §903.
[3] 18 PA.C.S. §7512(A).
[4] 35 PA.C.S. §780-113(A)(30).
[5] 35 PA.C.S. §780-113(A)(16). On Commonwealth's Motion, this Court granted leave to nol pros Count 4, Intentionally Possessing a Controlled Substance.
[6] 35 PA.C.S. §780-113(A)(32).

1

sentence of 40 months pursuant to the Recidivism Risk Reduction Incentive (RRRI) program. Furthermore, Appellant received a concurrent sentence of not less than one year nor more than three years on Criminal Conspiracy. No further penalty was imposed on the remaining counts.

At trial, the evidence viewed in the light most favorable to the Commonwealth, as verdict winner, revealed the following:

On the morning of April 4, 2011, agents of the Office of the Attorney General learned of a suspicious parcel at a Federal Express facility in Bristol. The parcel was shipped from Nogales, Arizona, and destined for 221 Grove Street in Morrisville. N.T. 7/18/11 at 29, 32. Agent Timothy King travelled to the FedEx location to inspect the package. Id. at 27, 32. Agent King looked inside the package and detected the odor of marijuana and fabric softener. Id. at 32. He observed dryer sheets inside the package, which he knew to be "frequently used for odor control to transport marijuana, especially marijuana, which is particularly smelly." Id.

As for the marijuana, King recalled that "the marijuana itself was a big compressed ball...like a block, and it was wrapped in layers of clear plastic wrapping interspersed with layers of dryer sheets; and it was placed in the package, double boxed, with packing peanuts surrounding it." Id. The parcel contained 15.25 pounds of marijuana, a Schedule I controlled substance. N.T. 7/19/11 at 77. King resealed the package and contacted his partner, Agent Alan Basewitz, and the other members of his task force team, Officer Thomas Hawn and Officer Madeline Quinones, to let them know he was en route to 221 Grove Street to conduct surveillance of the property. N.T. 7/18/11 at 33. Agent King then drove to the destination address with the parcel in the trunk of his car. Id.

Agent King reached Grove Street and began watching the residence and surrounding area. Id. at 34. Upon his arrival, King noticed a dark-colored Honda Accord parked on nearby Moreau Street, where its driver, the Appellant, had a clear view of 221 Grove Street. Id. While King waited for his partners to arrive, he drove around the neighborhood to "get the lay of the land." Id. at 36. King parked at the bottom of Grove Street so that he could view the residence and monitor

2

Appellant's Accord at the top of the block. Id. On several occasions during his observations, Agent King saw Appellant drive "through Grove Street and around and park again several times." Id.

When Agent King's partners arrived in the area, he directed them to the nearby Comfort Inn hotel, which is located three to four blocks away from Grove Street. Id. The agents used the Comfort Inn as a meeting location or staging area, where they briefed each other on the operation. Id. At the hotel, King informed his colleagues about the contents of the package and the information he had gathered to that point. Id. He also transferred the parcel to Officer Hahn who donned the attire of a FedEx delivery person and drove a white delivery van to the destination address for a controlled delivery. Id.

Officer Quinones' role was that of primary surveillance officer and, accordingly, she went to the target location first. Id. Quinones hid her vehicle and travelled by foot to a surveillance position right across Grove Street from the target property. Id. She was able to view the house from behind a fence that concealed her position. Id. Agents King and Basewitz then took a position behind a factory area about a block or two away from Grove Street. Id. Agent King testified that the Appellant "was observed coming and going; doing...what I would characterize as counter surveillance through the neighborhood." Id. at 37-38. King noticed that "when we were meeting at the Comfort Inn, [the Appellant] actually drove through the parking lot, like right in front of us, heading back towards the neighborhood." Id. at 38.

Officer Quinones informed Agents King and Basewitz that Officer Hawn delivered the package and placed it on the front porch, and subsequently entered his purported delivery van and drove south on Grove Street. Id. N.T. 7/19/11 at 149. Quinones spotted the Appellant in his car, following the delivery van as it left Grove Street. N.T. 7/19/11 at 149.

Appellant then circled the block and made a second pass down Grove Street. Id. at 36. Agent King learned that Appellant "was back on the block and had double-parked his car in front of 221 Grove Street." N.T. 7/18/11 at 39. As King and Basewitz turned onto Grove Street, King witnessed Appellant placing the

3

parcel into the trunk of his car. Id. The agents approached the Appellant from behind and immediately took him into custody. Id. Agent King recounted that he drew his weapon, but once Appellant was placed in handcuffs, King put away his gun. Id. at 40.

After Agent Basewitz handcuffed the Appellant, he verbally gave Appellant his Miranda warnings. N.T. 7/19/11 at 41. Appellant agreed to speak to Agent Basewitz without an attorney. Id. at 42. Appellant and Basewitz were standing on the sidewalk near the car about one house away from the target location. Id. Appellant initially claimed that he did not know what was inside the parcel and that he was supposed to deliver it to a friend. Id. at 42, 43. Basewitz informed the Appellant that if he wanted to cooperate with law enforcement, he had to tell the agent what he knew about the parcel's contents. Id. at 44. Eventually, Appellant admitted that the package contained marijuana and that his friend Sonya told him to pick it up and bring it back to her. Id. Appellant was to be paid in marijuana or money, but he was not sure of the amount. Id. at 45.

As Agent Basewitz spoke with the Appellant, Officer Quinones transcribed Appellant's statement. Id. at 53, 144. After Quinones read the statement to the Appellant, she asked if Appellant wished to make any corrections. Id. at 53, 145. Regarding the statement, Appellant added that the location was the residence of a relative of Sonya Manning. Id. at 147.

Thereafter, he signed the statement. Id. The signed statement indicated that the Appellant was to pick up "a package of weed." Exhibit C4, Trial 7/19/2011. Appellant never mentioned to the agent that he believed that the parcel contained cosmetic products. N.T. 7/19/11 at 147. Twenty minutes elapsed between the moment law enforcement officers read Miranda warnings to Appellant and the time he signed the statement. Id. at 144.

At trial, Appellant testified that his friend, Sonya Manning, called him at home and requested that he pick up "some things" coming to where she used to live in Pennsylvania. Id. at 102. According to Appellant, he was supposed to collect cosmetics, namely Avon products, which Manning would sell. Id. at 102, 107. Appellant, a resident of Trenton, New Jersey, maintained that, upon arriving in

4

Pennsylvania, he "could not find the address at first" and had to drive around the target area to find the address. Id. at 102. Eventually, Appellant found the address for which the package was destined, after which he parked and waited. Id. The package did not arrive immediately. Id. Appellant journeyed to 7-Eleven to buy a newspaper to read and pass the time while he waited for the delivery. Id. Appellant returned to the Grove Street area, parked and finally saw the parcel being delivered. Id. He picked up the package and placed it into his trunk before being arrested. Id. at 103-04. Contrary to the testimony of police, Appellant denied that he admitted he knew the package contained marijuana. Id. at 106.

Following the conclusion of the trial, the jury returned a guilty verdict as to: one (1) count of criminal conspiracy, one (1) count of criminal use of communication facility, one (1) count of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance (marijuana), and one (1) count of the use or possession of drug paraphernalia. On November 3, 2011, we sentenced Appellant to a term of incarceration of not less than four (4) years to not more than eight (8) years and a $30,000 fine pursuant to the then-valid mandatory minimum since for drug trafficking. Appellant also received a concurrent sentence of not less than one (1) year to not more than two (2) years incarceration for the Criminal Conspiracy count.

Appellant filed a timely appeal from the judgment of sentence. On September 24, 2012, the Pennsylvania Superior Court denied the appeal and affirmed the judgment of sentence. Commonwealth v. Smith, 60 A.3d 860 (Pa. Super. Ct. 2012). On December 21, 2012, the Superior Court denied Appellant's request for re-argument. On February 4, 2015, following the re-instatement of his right to petition for allowance of appeal, the Pennsylvania Supreme Court denied his request for appeal. Commonwealth v. Smith, 631 Pa. 713, 109 A.3d 679 (2015).

On February 8, 2016, Appellant filed a *pro se* PCRA petition. In this filing, Appellant set forth general claims for relief without any factual specification. By Order docketed on June 8, 2016, attorney Stuart Wilder was court appointed to represent Appellant in his PCRA petition. By

5

Order dated September 26, 2016, we directed that Appellant file an amended PCRA petition by November 1, 2016. On November 1, 2016, Appellant's PCRA counsel filed a "no merit" letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) and a motion to withdraw as counsel. By Order dated November 4, 2016, Appellant was given twenty (20) days to respond to counsel's "no merit" letter. Appellant never filed a response as permitted by the Court.

By Order dated December 15, 2016, after considering Appellant's motion for Post-Conviction Relief, Appellant's post-conviction collateral petition entitled "Petition for Writ of Habeas Corpus" filed on or about February 8, 2016, the "no merit" letter filed by Appellant's PCRA counsel, the response by the Commonwealth, and a review of the record in this case, we denied and dismissed Appellant's request for post-conviction relief. On January 13, 2017, Appellant filed a *pro se* Notice of Appeal with the Superior Court of Pennsylvania. By Order dated January 20, 2017, we directed Appellant to provide the court with a copy of the Notice of Appeal and a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. Appellant was to file his concise statement of errors complained of on appeal no later than twenty-one (21) days from the date of that Order meaning that Appellant was to file his concise statement no later than February 10, 2017. On May 10, 2017, after an initial draft of this Opinion had been prepared, Appellant filed an untimely concise statement of errors. Pursuant to Pa.R.A.P. 1925(a), we file this Opinion.

### STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Pursuant to this Court's Order dated January 13, 2017, Appellant filed a statement of matters complained of on appeal alleging the following errors, *verbatim*:

1. DID THE COMMONWEALTH, LAW ENFORCEMENT, TRIAL COURT ABUSE THERE DISCRETION WHEN OBTAINING EVIDENCE WITH OUT A WARRANT?

6

2.  DID LAW ENFORCEMENT ABUSE THERE DISCRETION IN THE SEARCH OF APPELLANT'S VEHICLE?

3.  DID THE COMMONWEALTH ABUSE. THERE DISCRETION WHEN ISSUING A WARRANT FOR APPELLANT WHEN ILLEGAL ACTIVITY WAS CONDUCTED, BY THE DEA-TASK FORCE?[7]

4.  DID FEDEX MANAGEMENT OF THE FEDEX SORTING FACILITY CONTAMINATE THE EVIDENCE IN APPELLANTS CASE WHEN MANAGEMENT ADMINISTRATIVELY OPENED FEDEX EXPRESS SAVER PARCEL?

5.  DID LAW ENFORCEMENT, COMMONWEALTH ERROR IN CONDUCTING A ILLEGAL CONTROLLED BUY?

6.  DID DEA-TASK FORCE ERROR IN THE WEIGHT OF THE EVIDENCE THAT WAS INTRODUCED AS EVIDENCE FOR THE PERPOSE OF A CONVICTION?

7.  DID THE COMMONWEALTH ERROR IN NOT GRANTING A MOTION FOR SUPPRESSION OF EVIDENCE AT TRIAL?[8]

8.  DID THE LAW ENFORCEMENT ERROR IN THE INTERROGATION OF APPELLANT WITHOUT COUNSEL AND APPELLANT STATE HIS MIRANDA WARNINGS, WHICH IS A VIOLATION OF APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITS STATES CONSTITUTION AS WELL AS PENNSYLVANIA CONSTITUTION?

9.  DID THE COMMONWEALTH ERROR IN NOT GIVING APPELLANT A NEW TRIAL FOR THE FOLLOWING STATEMENT STATED IN THIS DOCUMENT?

DISCUSSION

As a preliminary matter, the purpose of the Post-Conviction Relief Act is to afford collateral relief to individuals convicted of crimes they did not commit and to persons serving illegal sentences. 42 Pa. C.S.A. § 9542. Claims arising from ineffective assistance of counsel are

---

[7] A careful review of the record indicates that there was no warrant issued for the Appellant. Appellant was arrested after a controlled delivery of a package containing bulk marijuana. Law enforcement observed the Appellant pick up the package and place it in his vehicle's trunk. Immediately thereafter, law enforcement arrested Appellant.

[8] We interpret Paragraph 7 to refer to Appellant's statement to police because the only issue Appellant raised at his suppression hearing concerned the voluntariness of his statement. We therefore address paragraphs 7 and 8 jointly as Appellant raises the same issue.

7

cognizable under 42 Pa. C.S.A. § 9543 (a)(2)(ii). In considering an ineffectiveness claim, a court is guided by the three-pronged standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) and adopted by our Pennsylvania Supreme Court in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987). Pursuant to Strickland and Pierce, a PCRA petitioner must establish: (1) the underlying claim is of arguable merit; (2) counsel's challenged acts or omissions did not have a reasonable strategic or tactical basis; and (3) the petitioner suffered actual prejudice as a result of counsel's conduct. Strickland, 466 U.S. at 687; Pierce, 527 A.2d 973 at 975. The PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied, "...that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings." Commonwealth v. Paddy, 609 Pa. 272, 15 A.3d 431, 442 (2011) (quoting Pa.R.Crim.P. 909(b)(2)). To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court "otherwise abused its discretion in denying a hearing." Commonwealth v. Roney, 622 Pa. 1, 17–18, 79 A.3d 595, 604–05 (2013) *quoting* Commonwealth v. D'Amato, 579 Pa. 490, 856 A.2d 806, 820 (2004).

After an extensive review of the record, the Commonwealth's Response to Appellant's Post Conviction Collateral Relief Request, and Appellant's PCRA counsel's "Finley" letter, we suggest that the issues Appellant proposes to raise in this post conviction relief proceeding are meritless. For ease of discussion, we distill Appellant's contentions into the following subject matters: (1) the search and seizure of the Federal Express package, (2) an alleged controlled buy conducted by law enforcement, (3) Appellant's statement to police, and (4) the weight of the marijuana introduced at trial. We will address each topic separately below.

8

## FEDERAL EXPRESS PACKAGE

We find Appellant's claims alleging law enforcement misconduct pursuant to an illegal search and seizure of a Federal Express package to be meritless.[9]

Under Pennsylvania law, protections afforded by the Fourth Amendment and the equivalent provision of the Pennsylvania Constitution do not apply to searches and seizures conducted by private individuals. Pa. Const. Art. I, § 8; Commonwealth v. Harris, 572 Pa. 489, 817 A.2d 1033 (2002). The protections against unreasonable searches and seizures are directed toward governmental action and, hence, are wholly inapplicable to search or seizure, even unreasonable ones, effected by private individuals not acting as an agent of the government or with the participation or knowledge of any governmental official. Commonwealth v. Cieri, 346 Pa. Super. 77, 499 A.2d 317 (1985). To prevail in a challenge to a search and seizure, a defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Commonwealth v. Maldonado, 2011 PA Super 29, 14 A.3d 907 (2011). No legitimate expectation of privacy will be found in a package neither addressed to a defendant, addressed to the defendant's residence, nor addressed to a defendant's alias. Commonwealth v. Black, 758 A.2d 1253 (Pa. Super. Ct. 2000).

A careful review of the record reveals that Appellant did not have a legitimate expectation of privacy in the Federal Express package. The trial record indicates that a Federal Express employee opened the package and then subsequently called the police once marijuana was discovered. N.T. 07/18/11, pp 29-32. There was not a scintilla of evidence that FedEx management contaminated the parcel's contents. Furthermore, the Federal Express package was neither addressed to Appellant nor to Appellant's residence. The Federal Express package was

---

[9] We summarily address issues 1-4 contained in Appellant's concise statement in this subsection.

also not addressed to an alias of the Appellant. The FedEx Corporation is a business enterprise engaged in package delivery services. Neither the FedEx Corporation nor its employee was acting as a government agent at the time Appellant's package was opened. Since neither the Federal Express Corporation nor its employee were agents of the government, the Federal Constitution's Fourth Amendment and Article 1 §8 of the Pennsylvania Constitution's prohibitions against unreasonable searches and seizure were not implicated. Appellant's contentions that law enforcement abused their discretion and/or engaged in misconduct lacks a factual basis.

The search of Appellant's vehicle was also proper. The prerequisite for a warrantless search [or seizure] of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required. Com. v. Freeman, 2015 PA Super 252, 128 A.3d 1231, 1243 (2015). The trial record reveals that once law enforcement was notified that the FedEx package contained marijuana, law enforcement engaged in a controlled delivery. The trial record reveals that Officer Hawn delivered the FedEx package by placing it on the front porch at the destination address. Shortly thereafter, law enforcement observed Appellant pick up the FedEx package containing the marijuana and place it in his vehicle's trunk. Law enforcement agents then approached Appellant and arrested him. Consequently, because law enforcement knew the package Appellant placed in his vehicle's trunk contained marijuana, the search of Appellant's vehicle was proper.

Neither law enforcement engaged in illegal activity nor did the Commonwealth abuse its discretion. The law is clear that a PCRA litigant has the burden of articulating the facts and circumstances justifying the grant of relief. See Commonwealth v. Collins, 687 A.2d 1112 (Pa.1996) wherein the Pennsylvania Supreme Court held that a PCRA petitioner must present facts supporting each issue; where the necessary factual allegations are not supported by the available

10

record petitioner must identify specific documents, affidavits, and other evidence that would support the allegations; See Also Commonwealth v. Durst, 559 A.2d 504 (Pa.1989). Appellant, in his concise statement, accuses law enforcement of engaging in illegal conduct and the Commonwealth of abusing its discretion. The record does not support such contentions, and Appellant has failed to provide supporting details or documentation to bolster his assertions. Accordingly, Appellant's contentions that law enforcement engaged in illegal activity and that the Commonwealth abused its discretion are wholly without merit.

Based on the foregoing, Appellant's claims concerning law enforcement's alleged misconduct with respect an illegal search and seizure of a Federal Express package cannot succeed.

## THE CONTROLLED BUY

Appellant alleges that law enforcement and the Commonwealth erred in conducting an illegal controlled buy of the Federal Express package. A careful review of the trial record reveals that no such "buy" occurred.

Pursuant to Pa.R.A.P.1925(b)(4) an appellant is to set forth only those rulings or errors that the appellant intends to challenge. Pa.R.A.P. 1925(b). As stated above, when a PCRA petitioner raises issues that are not supported by the available record, the PCRA petitioner must identify specific documents, affidavits, and other evidence that would support the allegations. Commonwealth v. Collins, 687 A.2d 1112 (Pa.1996). Although the courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written pro se submission than is fairly conveyed in the pleading. Commonwealth v. Blakeney, 631 Pa.1, 108 A.3d 739 (2014). The conduct of law enforcement officials or government agents violates due process only if said conduct is so grossly shocking and so outrageous as to violate a universal sense of justice.

11

Commonwealth v. Benchino, 399 Pa. Super. 521, 582 A.2d 1067 (1990).

In the instant case, Appellant avers that law enforcement and the Commonwealth erred in conducting an illegal controlled buy. The trial record reveals that no such buy occurred. Rather, the record reflects there was a controlled delivery of the Federal Express package containing marijuana whereby Appellant picked up the package and placed it inside his vehicle's trunk. Appellant fails to support his allegation with any specific reference to documents, affidavits, or any other supportive evidence. Even if we adopt a liberal construction of Appellant's contention by interpreting the "controlled buy" as a reference to the controlled delivery, law enforcement did not engage in outrageous conduct that would "violate a universal sense of justice" as law enforcement merely delivered a package to its intended destination. Consequently, Appellant raises no cognizable post-conviction stage issue with respect to the controlled delivery of the Federal Express package.

## APPELLANT'S STATEMENT TO POLICE

Appellant contends that his statement to police was involuntarily coerced. This issue was fully litigated on the merits by his prior counsel through direct appeal. We suggest that Appellant's claim with respect to the voluntariness of his statement to police is therefore beyond the scope of the PCRA statute.

In Post-Conviction Relief Act (PCRA) petitions, claims that have been previously litigated on direct appeal are not cognizable under the Post-Conviction Relief Act (PCRA). 42 Pa.C.S.A. §9541 *et seq.* To be entitled to post conviction relief a petitioner must establish, by a preponderance of the evidence, that a petitioner's conviction or sentence resulted from one or more of the errors found in the PCRA statute, that a petitioner's claims have not been previously litigated or waived, and/or that the failure to litigate an issue prior to trial, during trial, during unitary

12

review, or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel. 42 Pa.C.S.A. § 9543(a)(2-4), Commonwealth v. Keaton, 615 Pa. 675, 45 A.3d 1050 (2012). An issue is "previously litigated," if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S.A. § 9543(a)(3); Id. Post-conviction review of claims previously litigated on appeal cannot be obtained by alleging ineffective assistance of prior counsel and by presenting new theories of relief to support previously litigated claims. See Commonwealth v. Wilson, 452 Pa. 376, 305 A.2d 9 (1973); Commonwealth v. Peterkin, 538 Pa. 455, 649 A.2d 121 (1994); Commonwealth v. Collins, 585 Pa. 45, 56, 888 A.2d 564, 570 (2005).

In the instant case, Appellant's claim that his statement to police was involuntarily coerced was fully litigated on the merits by his prior counsel through direct appeal. Commonwealth v. Smith, No. 550 EDA 2012 (Pa. Super. 09/24/12), pp 10-14. Both the suppression hearing record and trial testimony revealed that the Appellant voluntarily provided his statement to police. N.T. 07/18/11, pp. 40-62; N.T. 07/19/11, pp, 100-43. At the conclusion of the suppression hearing, we found that, "Appellant had been fully advised of his Constitutional rights and Appellant understood those rights when he gave his statement to police." Opinion, Trial Court, 04/16/12, p. 8. We further found that, "Appellant freely, knowingly and voluntarily gave his statement without improper coercion." Id. At the Appellant's trial prior to deliberation, the jury was explicitly instructed that only if it found that Appellant gave his statement voluntarily was it permitted to use Appellant's statement as evidence against him. N.T. 07/19/11, pp 184-85. Upon its review on direct appeal, the Superior Court affirmed the admissibility of the Appellant's statement. Commonwealth v. Smith, No. 550 EDA 2012 (Pa. Super. 09/24/12). Appellant cannot seek post conviction relief by merely restating previously litigated issues under the auspices that his counsel

13

was ineffective. We therefore believe that Appellant's claim with respect to the voluntariness of his statement to police was previously litigated and therefore cannot succeed in this PCRA relief proceeding.

## THE WEIGHT OF THE MARIJUANA

Appellant's challenging the weight of the marijuana introduced at trial is also not appropriate for PCRA litigation in this case.[10]

The legal principles applicable to a review of the sufficiency of probable cause affidavits are well settled. The standard for evaluating probable cause is a "totality of the circumstances" test as set forth in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted in Commonwealth v. Gray, 503 A.2d 921 (Pa.1985). In evaluating probable cause, "a magistrate is not required to find a showing of criminal activity; mere probability of such criminal activity is sufficient for probable cause." Commonwealth v. Taylor, 2004 PA Super 162, 850 A.2d 684 (2004). Furthermore, "the information offered to demonstrate probable cause must be viewed in a common sense, nontechnical, ungrudging and positive manner." Id. A defendant has the right to test veracity of facts establishing probable cause recited in a search warrant affidavit and has a right to test such facts through cross-examination of the Commonwealth's witnesses and may also testify himself or call his own witnesses. Commonwealth v. Ryan, 268 Pa. Super. 259, 407 A.2d 1345 (1979).

In the instant case, the Commonwealth clearly established the weight of the controlled substance at trial. Appellant had the opportunity to challenge the marijuana seizure and to

---

[10] We deem paragraph 6 of Appellant's concise statement, whereby Appellant challenges the "weight of the evidence that was introduced as evidence for the perpose [sic] of a conviction," as insufficiently specific. We interpret Appellant's averment to mean that Appellant is challenging the discrepancy between the weight of the marijuana admitted at his trial and the weight contained in the probable cause affidavit. We interpret Appellant's averment in this manner because Appellant's PCRA counsel, in his "Finley" letter, indicated it was Appellant's desire to do so. Additionally, no other averments in Appellant's concise statement reference the marijuana's weight.

14

challenge the discrepancy between the description of the controlled substance in the probable cause affidavit and the laboratory results.[11] Such a challenge would have been a futile exercise as the probable cause affidavit indicated that the weight of the seized marijuana was merely an estimate. Affidavit of Probable Cause ("The parcel was determined to contain bulk marijuana in white garbage bags and tape; estimated net weight 17 pounds"). The probable cause affidavit was also prepared well before the marijuana package was precisely weighed and analyzed by the crime laboratory. N.T. 07/19/11, p. 79. We therefore perceive that Appellant's post conviction relief claim challenging a discrepancy between the package's weight as described in the probable cause affidavit and the package's weight as measured by the crime laboratory to be an issue irrelevant to the truth finding process. We suggest, therefore, that this issue is not appropriate for post conviction relief review.

## CONCLUSION

For the foregoing reasons, we suggest that the present appeal should be dismissed.

BY THE COURT:

Date: 5/18/2017

C. THEODORE FRITSCH, JR., J.

**N.B.** It is your responsibility to notify all interested parties of the above action.

---

[11] Direct examination of Commonwealth's witness, Linda Brudick, revealed the process of testing the seized marijuana. N.T. 07/19/11, pp 76-80. The marijuana was weighed and tested on or about April 18, 2011.

15

*Comm. of PA v. Carlton Roy Smith; Court of Common Pleas of Bucks County, Criminal Div.*
*No. CP-09-CR-002706-2011*

Copies to:

Mr. Carlton Roy Smith
#KG-2536
SCI – Laurel Highlands
5760 Glades Pike
P. O. Box 631
Somerset, PA 15501
   *Pro se Appellant*

Stuart Wilder, Esquire
Pratt, Brett & Luce, P.C.
68 East Court Street
P.O. Box 659
Doylestown, PA 18901
  *Court appointed counsel for Appellant; Leave to Withdraw Granted 12/15/16*

Karen A. Diaz, Esquire
OFFICE OF DISTRICT ATTORNEY
Bucks County Justice Center
100 N. Main Street
Doylestown, PA 18901
  *Attorney for Appellee*